## Bailey *versus* Miltenberger.

Real estate in Pennsylvania, is held subject to the right of eminent domain possessed by the Commonwealth, and a purchaser always takes his title subject to that right.

A vendee cannot maintain an action of covenant upon a general warranty in his deed, against his vendor, in consequence of the exercise of such right by the Commonwealth, in appropriating a part of the lands to public use. Patterson v. Arthurs, 9 *Watts* 152, and Dobbins v. Brown, 2 *Jones* 75.

An Act of Assembly authorizing the opening of a street, and the passage of an ordinance by the councils of the city of Pittsburgh directing it to be laid out, and a survey made by the proper officer and filed before the conveyance, are notice to a purchaser of the existence of the right of way over the land.

The absolute ownership of land adjoining a navigable stream, extends only to ordinary high water mark; below that, the ownership of the soil will not authorize such use of it, as will interfere with the use of the stream as a highway, or cause it to encroach upon other riparian owners.

ERROR to the District Court of *Allegheny county*.

This was an action of covenant, by Samuel Bailey against George Miltenberger, on a covenant of warranty contained in a deed. Miltenberger, on the 12th February 1844, was the owner of two undivided third parts of a lot of ground in the city of Pittsburgh,

[Bailey *v.* Miltenberger.]

with sundry improvements on it, known as the " Pennsylvania Rolling Mill," the other undivided third part being in James Brown. On that day Miltenberger and Brown conveyed one undivided fourth part of the premises to the plaintiff, Samuel Bailey, and another undivided fourth part to Francis G. Bailey; Miltenberger warranting the two undivided third parts of such shares, and Brown the undivided third part of the same. Francis G. Bailey afterwards, on the 20th October 1846, conveyed his interest to Samuel Bailey, the plaintiff.

The ground occupied by the rolling mill extended originally to the Allegheny river; but on the 31st March 1836, an Act of Assembly was passed authorizing the laying out of a street and landing along that river called Duquesne Way. And on the 25th February 1839, an ordinance was passed by the councils, locating the street and authorizing notice to be given. The location was made by the regulator, and its boundaries and courses marked upon the ground, a plot made, and notice given in the newspapers.

The plaintiff alleged that his furnaces were on the line of the street, and were greatly impaired in value by the laying out of the street and landing for public purposes.

The defendants proved by Albert Culbertson, that he had purchased an interest in the property at the same time from Miltenberger and Brown, and that it was understood at the time by all the parties, that Bailey, Brown & Co., who were the purchasers of the whole property, stepped into the shoes and took the places of Miltenberger and Brown.

The plaintiff contended that the title of Miltenberger to the land over which the street was authorized to be laid out, was divested by the Act of Assembly before referred to, and that he had been evicted by title paramount. But if not so divested, it was such an encumbrance upon the property as amounted to a breach of the defendant's covenant of warranty, and rendered him liable in damages.

The court below (HAMPTON, P. J.), after stating the facts and the questions presented, instructed the jury as follows:—

" First, then, to the title.—This question depends entirely upon the true construction of the Act of March 1836. The power of the legislature, on the ground of sovereignty, or by virtue of the right of eminent domain existing in the state, it is conceded on all hands, may take private property for public use, by making adequate compensation therefor. It is also conceded, that streets in a city, and landings and wharves on the margins of our navigable rivers, are of public utility. And it is not denied that the legislature may, if deemed necessary for public use, by making adequate compensation to the owner, divest a person of his entire title and estate in his property, whenever the public good or convenience may require

[Bailey *v.* Miltenberger.]

it.   Anything short of this would impair the sovereignty of the
state, and limit that power which is said to be illimitable.   The
only question to be considered is, to what extent did the legisla-
ture exercise this power, in the passage of the act under considera-
tion ?   Did they take away the owner's right of soil—his fee simple
—and vest it in the city or the public ?  or did they only grant to
the city the right to improve, regulate, and control it for the use
and convenience of the public, as an easement thereon?   The
plaintiff's counsel contends that the former was intended, from the
peculiar language employed in the closing sentence of the act,
which declares, ' and all lots, which previous to the opening of
the said way, were bounded by the Allegheny river, shall for ever
hereafter be bounded by and front on the way herein authorized
to be opened.'   This provision is certainly novel, and such as
cannot perhaps be found in any other act on similar subjects, and
at first blush seems to countenance the construction contended for
by the learned counsel for the plaintiff.   But a careful and thorough
examination of the whole act, its object and design, has satisfied
my mind, that no such intention can fairly be imputed to the
legislature.

   " Aside from the necessity for the exercise of any such power,
which certainly cannot be claimed in this instance, such a con-
struction would make the statute operate as a fraud upon lot
holders, in making their application for damages, by inducing
them to believe the public was only to have an easement on their
lots, while in fact their entire estate in them was to be divested.
And furthermore, the act itself would be unconstitutional, on the
ground that no adequate provision is made for compensation for
the loss of the entire title.   The provision to which I have referred
is as follows : ' And any person or persons owning lots to which
the said way is adjacent, and who shall consider that his, her, or
their lot or lots are or shall be *damaged by the said location*, may
make application by petition to the next Court of Quarter Sessions
following the publication of the said notice, who shall thereupon
appoint twelve discreet and disinterested persons, who being first
sworn or affirmed, *shall proceed to inquire*, on actual view of the
premises, *whether any*, and *what damages may or shall be sustained*
by the persons petitioning, *by reason of the opening of said way.*'
Thus it appears the only damages provided for are such as shall
be sustained by the lot holders, by reason of *the location* and *open-
ing of the street*, without any intimation to them that their entire
title is to be divested, nor is that fact to enter into the estimate
of the viewers, in assessing the damages; and their decision is
made final and conclusive.   Surely, the legislature could not have
meant to deprive the lot holders on the route of that street of their
entire title to property worth millions of dollars, without notice of
such intention, and provision for a fair and ample compensation.

[Bailey *v.* Miltenberger.]

No reason can be imagined why the owners of property on the line of this street should be placed on a different footing from those on any other street in the city. The whole aim and object of the act seems to be to vest in the city for the use of the public the same powers they possess in relation to any other streets in the city. This would place the property holders on that street on a perfect equality with those on other streets; and the proper con- struction, in my opinion, to be given to the last clause of the act, is to limit the *exclusive use* of the lot holders to the southern line of Duquesne way, giving to the city authorities full and ample power to improve and regulate the ground thus taken, in the manner best calculated to promote the public convenience, without molestation by the former owners. On the most careful considera- tion, therefore, I have been able to give to this question, within the brief period allowed me for its examination, I am clearly of opinion that the fee simple, or residuary estate, remained in the defendant up to the date of his deed, and is now vested in the plaintiff. Nor does the decision of the Supreme Court in the case of Pittsburgh *v.* Scott, 1 *Barr* 309, weaken that opinion in the slightest degree, because the question now under consideration did not arise in that case, nor was it before that court at all. That was an action on the case brought by the city against Scott to recover damages for obstructing Duquesne way, and the main question in the cause was the constitutionality of the act authorizing the lay- ing out and opening that street. There had been a good deal of litigation in regard to the right of the city to open and use this way and landing. The defendant had piled some lumber on the street, and this action was brought merely for the purpose of test- ing the right of the city to the control of this street. The question now under consideration was not raised, nor in any way involved in the determination in that case. Consequently, any expressions used by the learned judge, in delivering the opinion of the court, about the title or property of the lot holders being vested in the city, are to be understood entirely with reference to the right to control and regulate the same for the use of the public, and not as deciding the question of seisin.

" Second. The next question is, whether this landing and street were such an encumbrance, or the opening and occupancy of the same, by the city, under the authority of the Act of Assembly, amounted to such an eviction, as will render the defendant liable' in this action on his covenant?

" Here there is no separate and specific covenant for quiet enjoyment; but we will suppose the covenant of general warranty of title, to embrace this specific covenant; and then consider whether the acts complained of, in relation to the location and opening of this street and wharf, constitute a breach of that covenant.

[Bailey *v.* Miltenberger.]

" Covenants of this kind are not to be extended by implication, so as to embrace acts done by the sovereign power of the state; but only such as are done by individuals. The state, by virtue of the right of eminent domain, may enter upon and take private property, for public use, by making adequate compensation therefor; and therefore all contracts about land may fairly be presumed to have been made in reference to this right, and the possibility of its being exercised. It has never been supposed, that the vendor or vendee contemplated a warranty against the exercise of this power, whenever the public good or convenience might require it. This doctrine applies with peculiar force in the present case, where the property purchased was situated on the bank of a navigable river, in a large and populous city, extending along its shore for more than a mile, where it required but a small share of forecast to see, that sooner or later, the public necessity would require that shore to be prepared and graded for a wharf or landing for vessels navigating the river. But the purchaser, the plaintiff here, was not left to mere conjecture on that subject; for nearly eight years before the date of his purchase, the legislature had authorized the city to lay out and open this street and wharf; and in 1839, nearly five years before the date of his deed, the city had exercised that authority by passing the necessary ordinances, and causing plans to be made out and filed in the office of the Clerk of the Quarter Sessions, and of the Recording Regulator, by marking the lines on the ground, and in some parts by opening the street and grading the wharf, appointing a wharf-master, and collecting wharfage. It was, therefore, no longer a matter of doubt and uncertainty whether the power granted by the Act of 1836, would be fully exercised by the public authorities of the city. But the rule would be the same, whether the authority were given by the legislature before or after the purchase, or given before and not exercised until afterwards; because, as we have already seen, the entire subject is left out of view by both parties in making their contract, or, if taken into consideration at all, the price is regulated with reference to the assertion of this right by the state.

" This view of the case disposes of the question of notice, which has been raised by the learned counsel, but not strongly pressed. If, however, notice to the purchaser were at all necessary, he undoubtedly had constructive notice of all the material facts connected with the authority and acts of the city in relation to this street and wharf. He was bound to know the Act of 31st March 1836, and all the ordinances duly passed by the councils of the city, and recorded under and in pursuance of that act, as well as the plans of the street and wharf made and filed according to its provisions, and how they affected the property he was about to purchase.

" We are fully sustained in these positions by several adjudicated cases in this state as well as other states in the Union. (See

[Bailey *v.* Miltenberger.]

9 *Watts* 152; 4 *Wharton* 86; 2 *Jones* 75; 10 *Barr* 135; 15 *Johnson* 453; *Id.* 487; 6 *Mass. R.* 454; 4 *Mass. R.* 428, and other cases to the same effect.)

" We therefore instruct you, that the plaintiff is not entitled to recover in this action, and your verdict will be for the defendant."

The jury accordingly found for the defendant, and judgment was entered upon the verdict.

Whereupon the plaintiff sued out this writ, and assigned the foregoing charge for error. .

*Williams,* for plaintiff in error.——That the title of the defendant was divested by the Act of 1836, is shown by its terms providing that all lots bounded by the river shall thereafter be bounded by and front on the way authorized by the act. The cases of Pittsburgh *v.* Scott, 1 *Barr* 315, and Avery and Ogden *v.* Pittsburgh (Pittsburgh, September Term, 1854), expound and affirm the constitutionality of the above act, and the right of the city to the way and landing. But the court held that the title was not divested, the public right being a mere easement involving no disseisin and no eviction which would sustain the action.

But supposing the public right to be a mere easement, it was such an encumbrance as impaired the title and authorized an action on the warranty. The cases of Patterson *v.* Arthurs, 9 *Watts* 152, and Dobbins *v.* Brown, 2 *Jones* 75, were relied on by the court as sustaining the ruling of this proposition in the negative.

It was not, however, contended that the covenant of warranty was broken by the subsequent exercise of the right by the state. It had been exercised before the sale, but there was no ostensible seizure or exclusive possession. The buildings were standing undisturbed upon the way, and the vendor denied the right of the state to take it. The case of Patterson *v.* Arthurs was that of a road which had been open and in use for thirty years. This landing and road was not opened and used until after the sale. And the case is anomalous and at variance with the current of authority elsewhere: Prescott *v.* Trueman, 4 *Mass.* 630; Kellog *v.* Ingersoll, 2 *Id.* 101; Pritchard *v.* Atkinson, 2 *N. H.* 335; Herrick *v.* Moore, 19 *Maine* 313; Hubbard *v.* Norton, 10 *Conn.* 431. The case in 19 *Maine* was one where the road had been laid out but not opened. And Dobbins *v.* Brown is not disputed so far as it holds that a covenant of warranty is not broken by a subsequent entry by the state. But so far as it holds that a mere disturbance, there being no covenant for quiet enjoyment, was not within the general warranty, and that such a covenant did not extend to an incorporeal hereditament, it presents a principle unreasonable and unjust, and does violence to all our opinions of right to suppose it to be law.

[Bailey v. Miltenberger.]

The analogy of the ancient warranty is not to be invoked at the expense of justice in this country, where the covenant of general warranty is almost the only one taken to protect the purchaser. The case is not warranted by the authorities: *Rawle on Cov. for Tit.* 305, *et seq.* and notes.

*Stanton*, for defendant in error, in addition to the authorities referred to by the court below, cited Frost *v.* Earnest, 4 *Wh.* 86; Bellinger *v.* Union Burial Ground, 10 *Barr* 135; Jackson *v.* Hathaway, 15 *Johns.* 453; *Id.* 487; Fairfield *v.* Williams, 4 *Mass.* 428; Perley *v.* Chandler, 6 *Id.* 454; 1 *Rolle*, 392, I. 13; 2 *East R.* 51; *Lofft's R.* 358; *Str.* *R.* 1007; 1 *Burr. R.* 143, 147; 2 *H. Black. R.* 527; and Paul *v.* Carver, 2 *Casey* 223.

LOWRIE, J.—We are of the opinion that the instructions to the jury, given by the learned judge who tried the case, cover all its material points; and they are so fully sustained by the reasons which accompany them that they need nothing further from us. The evidence that was rejected was immaterial.

The earnestness which has been manifested at different times in relation to the river beach taken for Duquesne way, seems to have arisen out of an entire misapprehension of the right of riparian owners on a navigable stream. It seems to have been thought in this case, that the ground between high and low water mark was of great value, especially for a rolling-mill, because it would be a great convenience to have the use of it for depositing cinders, and thus also the owners might increase the size of their lots. But this is a great mistake.

The Allegheny and many other navigable rivers do not, at the time of low water, occupy over one-third of their bed, and it would be most disastrous to allow every owner to fill out his land to low water mark. If it was effectually done at a single place, it would necessarily flood all the land above at high water, and soon sweep away the land of the opposite proprietors. It is only by stealing gradually on the public right that such a claim ever gets a foothold. The absolute ownership extends only to ordinary high water mark, and all below that is part of the public river highway, 1 *Pa. R.* 467, 1 *W. & S.* 353; which is perfectly consistent with the ownership of the soil, and with the exclusive right to the landing as such, but not with every use of it that would interfere with the highway, or unduly force the current from its natural course, to the injury of other riparian owners. On unnavigable streams the right of riparian owners extends to the middle of them, and on the principle contended for, they might just as reasonably fill up the bed of such streams to the middle, without regard to the rights of others. This right takes a modified form when applied to tide-water rivers, because their nature is different, and they require a different form of landings or wharves. But those wharves would

[Bailey *v.* Miltenberger.]

be of very little value if they did not extend beyond low water mark, and therefore they always depend for their true value upon police regulations.

Judgment affirmed.