## Keily v. Saunders, Appellant.

*Vendor and vendee—Sale of real estate—Deeds—Suit for pur-
chase money—Equity.*

1. An action of assumpsit to recover purchase money under a
contract for the sale of real estate is a substitute for a bill in
equity to enforce specific performance of the contract; and the
plaintiffs, in invoking the equitable powers of the court to compel
the defendant to pay the purchase money must be ready and wil-
ling to convey to the plaintiff the land which he purchased.

2. Where a decedent acquired in her lifetime by separate con-
veyance two adjoining city lots fronting on the same street, and
at her death there had been built on the larger lot a stable, and on
the smaller one a house which encroached three feet on the stable
lot, and the executors of the decedent advertise for sale at public
auction the stable lot, describing it under the heading of the word
"stable" with its street numbers, followed by a description of it
by its distance from a cross street, and its width and depth, all in
conformance with the deed to the decedent, but without giving
the actual width of the stable, a purchaser at the sale cannot be
compelled to take a deed for a lot three feet less in frontage than
the width advertised, and three feet more in distance from the
cross street than that mentioned in the advertisement.

3. In such a case the conditions on the ground and the fact that
the vendee saw the premises are not sufficient to prevent the latter
from demanding a conveyance of a lot of the full width adver-
tised, inasmuch as the decedent owned both lots and her executors
had full power to sell all of her real estate subject to a certain con-
dition as to the house lot, and also because a simple inspection
would not have disclosed to the vendee a discrepancy of three feet
in the frontage of the premises.

Argued May 1, 1912.  Appeal, No. 138, Jan. T., 1912,
by defendant, from order of C. P. No. 2, Phila. Co., Dec.
T., 1911, No. 3552, making absolute rule for judgment
for want of a sufficient affidavit of defense in case of
James P. Keily and William J. Kelleher v. Harry T.
Saunders.  Before BROWN, MESTREZAT, POTTER, ELKIN
and MOSCHZISKER, JJ.  Reversed.

Assumpsit to recover the balance of purchase money of real estate.

The facts are stated in the opinion of the Supreme Court.

The affidavit of defense was as follows:

This lot I was desirous of purchasing and I bid for the same the sum of $9,600. I desired said premises for the purpose of an automobile garage. Its width as advertised of fifty feet was barely sufficient for said purpose and if I had known that the plaintiffs when advertising the lot they had to sell as fifty feet in front on Lancaster avenue intended to convey a lot of less frontage, I would not have bid for the same.

After the property had been knocked down to me by the auctioneers at my bid of $9,600, plaintiffs delivered to me the title deeds to the property, in order that I might have the deed I desired them to execute prepared. These title deeds described the property as situate on the northeasterly side of Lancaster avenue two hundred feet southeasterly from Wyalusing avenue and containing in front on Lancaster avenue fifty feet.

In addition to the lot above described plaintiffs were the owners of another lot adjoining the same on the west and described as beginning on the northeasterly side of Lancaster avenue at a distance of one hundred and eighty-three feet southeastwardly from the southeasterly side of Wyalusing street and containing in front on Lancaster avenue sixteen feet eight inches.

Subsequently to the date when I bid for the property first above described, I learned that the dwelling house which was erected on the lot last above described extended nearly three feet eastwardly over the lot first above described, for which I had bid at the auction sale. If this fact had been known to me at the time of the sale I would not have bid for the property.

Since the date of said auction sale I have also learned that in the wall between the lot occupied by the dwelling house and the property first above described, there

are a number of windows and also a door opening into the yard of the dwelling house and thus indicating the existence of some right by the owner of the property first above described over the lot adjoining the dwelling house.

For the first time, after I had made the bid and paid in the $500, called to be paid at the time of the sale, I learned that plaintiffs proposed to convey to me only a lot beginning at a point on the northeasterly side of Lancaster avenue two hundred and two feet eleven and one-quarter inches southeastwardly from Wyalusing street, instead of two hundred feet southeastwardly therefrom, and containing in front on said Lancaster avenue only forty-seven feet and three-quarters of an inch instead of fifty feet.

As the plaintiffs are the owners of property of the full width described in the said advertisement and as the point at which their property as described in said advertisement commences is within the line of the properties owned by them, I caused to be prepared and tendered to the plaintiff's through their attorney, Thomas H. McCaffrey, at the same time that they, through said attorney, tendered to me the deed described in plaintiff's statement, a deed for the premises which they had advertised for sale and which I purchased, described (as hereinbefore set forth) as commencing on the northeasterly side of Lancaster avenue at the distance of two hundred feet southeastwardly from the southeasterly side of Wyalusing street and extending southeastwardly along said northeasterly side of said Lancaster avenue fifty feet to a point.

The plaintiffs, through their attorney, declined to execute said deed. Through my attorney, therefore, I declined to accept the deed tendered by plaintiffs as in accordance with the agreement of sale, and demanded from the plaintiffs the repayment of the $500 deposited by me in accordance with the terms of sale. The plain-

tiffs, through their attorney, refused to repay me said sum.

I deny that the deed tendered by the plaintiffs to me is in accordance with the agreement of sale to which I was a party or that I am in any way bound to accept a deed for the property described therein or to pay the plaintiffs anything with respect thereto.

I therefore owe the plaintiffs nothing at the present time. On the contrary, they are indebted to me in the sum of $500, being the amount of the deposit which I made in accordance with the terms of sale. For this amount I shall ask a certificate at the trial of this cause.

I make the foregoing affidavit in part of my own knowledge and in part upon information received from others. I believe all the facts herein set forth to be true and expect to be able to prove the same at the trial of this cause.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*John G. Johnson,* with him *James Wilson Bayard,* for appellant.—The equities of the case as between the parties is in favor of the defendant.

It is very clear that if this contract is to be enforced either the purchaser must receive something different from what he intended to buy or the sellers must give something different from what they intended to sell. As the mistake was caused by the sellers, it is submitted that they at least cannot enforce the contract to the detriment of the purchaser.

The appellees cited to the court below five cases. A somewhat careful search of the digests has failed to disclose any case which comes any nearer to the present issue than those which the appellees have so cited. An examination of these cases will show that they wholly fail to support the appellees' contention.

We have here a case the like of which we believe has not yet been brought before the courts of this Commonwealth in any reported case, viz: where a person who owns an entire lot, which he describes by courses and distances in his offer to sell it, refuses to convey the lot as he describes it; but offers to convey a less lot, because in his offer he also showed that the property was improved with a stable which bore certain street numbers, and that stable as actually erected starts at a different point and does not cover all the land which he offered to convey.

This is not a case where the vendee is trying to get out of his bargain. He is before this court stating that he is ready to carry out the bargain in accordance with its expressed terms. Such a specific performance of the agreement has been refused him.

If the appellees believe it for the interest of the estate not to convey the land which they offered to convey to him, how can they demand from him an acceptance of a different lot, which, as the affidavit expressly avers, was one he would not have bought, and which would not be available for the purpose for which he was endeavoring to purchase?

The appellant is not anxious to injure the estate which the appellees represent, and, if they believe the conveyance of the lot which they offered to sell will be detrimental to the estate by reason of its embracing part of the adjoining dwelling house, he is willing to surrender his agreement of sale, provided the deposit he made is returned to him. This is shown by his demand in his affidavit for a certificate for the amount of the deposit money. He is not here demanding his pound of flesh.

We submit that he should not be called upon to take title to a lot of a different size from that which he bought, thus giving to the appellees the advantage of selling a part of a lot they own for a price based upon the size of the whole lot, and yet retaining the residue

of that lot, so that it will enhance the value of the adjoining property which they own.

*Thomas H. McCaffrey,* for appellees.—The case at bar falls within the class of cases dealing with sales of farms as entireties, that they may contain a greater number or a less number of acres than the parties so understood at the time of the agreement of sale, both parties are nevertheless, bound. So with city properties sold by number: Coughenour v. Stauft, 77 Pa. 191; Kreiter v. Bomberger, 82 Pa. 59; McCullough v. Manning, 132 Pa. 43; Shattuck v. Cunningham, 166 Pa. 368; Spiving v. Printy, 54 Pitts. Leg. J. 33.

OPINION BY MR. JUSTICE MESTREZAT, May 22, 1912:

This is an appeal by the defendant from a judgment entered against him for want of a sufficient affidavit of defense. The action was assumpsit to recover the purchase money alleged by the plaintiffs, the executors of Margaret Donnelly, deceased, to be due for a city lot sold by them to the defendant. Margaret Donnelly died in September, 1909, seized of certain premises on the northeasterly side of Lancaster avenue, in the city of Philadelphia, described in the statement as follows: "Beginning at a point on the northeasterly side of Lancaster avenue at the distance of 183 feet 4 inches southeastwardly from the southeasterly side of Wyalusing street......thence extending southeastwardly 66 feet 8 inches to a point, thence along the line parallel with Wyalusing street 228 feet to a point in the southwesterly side of Merion avenue,......at the distance of 250 feet southeastwardly from Wyalusing street, thence extending northwestwardly along the southwesterly side of the said Merion avenue fifty feet to a point, thence extending southwestwardly along a line parallel with the said Wyalusing street 114 feet to a point, thence northwestwardly along a line parallel with the said Lancaster avenue 16 feet 8 inches to a point, thence extend-

ing southwestwardly along a line parallel with said Wyalusing street 114 feet to a point in the said northeastwardly side of Lancaster avenue and place of beginning." Lancaster avenue and Merion avenue are 228 feet apart and are at right angles with Wyalusing street, which is southwest of the premises. described. On the northeasterly part of the premises is a large three-story brick stable, and on the other or southwesterly part of the lot is a brick dwelling house encroaching nearly three feet on the other part of the premises, both buildings fronting on Lancaster avenue. The stable has three street numbers, and the dwelling one street number, 4553. The premises were conveyed to the decedent in two parcels, the eastern part fronting or having a width of 50 feet on Lancaster avenue and extending the same width 228 feet to Merion avenue, and the western part fronting 16 feet 8 inches on Lancaster avenue and extending back the same width a distance of 114 feet.

The decedent by her will empowered her executors, at their discretion, to sell any or all of her real estate at the best prices which could be obtained for the same, providing, however, that the part of the premises numbered 4553 be not sold until her sister was provided with a home or she gave her consent to the sale. In pursuance of this authority the executors offered for sale at public auction by the hands of an auctioneer and at his salesroom in the city a part of the premises above described. The sales catalogue of the auctioneer and the hand-bills described the premises to be sold as follows:

"Valuable Three-Story Brick Stable
4545-4551 Lancaster Avenue.

All that certain lot or piece of ground with the improvements thereon erected, situate on the northeasterly side of Lancaster avenue, at the distance of 200 feet southeastwardly from the southeasterly side of Wyalusing street, in the Forty-fourth ward of the city of Phila-

delphia; containing in front or breadth on the said Lancaster avenue 50 feet, more or less, and extending northeastwardly between lines parallel with Wyalusing street 228 feet, more or less, to Merion avenue." The advertisement then describes the brick stable as the improve-provement on the premises to be sold. The terms provided that the sale should not be invalidated by errors or misdescription of the size of the parcel of land sold or of the improvements which may be thereon. The defendant was present at the sale, purchased the property for nine thousand six hundred dollars, and in compliance with the terms of sale paid five hundred dollars on the purchase money. Shortly thereafter the plaintiffs tendered to the defendant a duly executed deed and demanded payment of the balance of purchase money. Payment was refused because the deed did not convey to the defendant the premises which he had purchased at the sale. This action was then brought by the plaintiffs to enforce payment of the purchase money.

The deed tendered to the defendant contained a description of the premises according to a recent survey. Briefly stated, it describes a lot beginning at a point in the northeasterly side of Lancaster avenue two hundred and two feet and eleven and one-fourth inches southeasterly from Wyalusing street, thence forty-seven feet and three-fourths inches along the north side of Lancaster avenue, thence parallel with Wyalusing street two hundred and twenty-eight feet to Merion avenue, thence fifty feet along Merion avenue, then southwestwardly on a broken and an irregular line to Lancaster avenue, the place of beginning.

The statement of facts relieves the solution of the question at issue from any difficulty. This is an action to recover purchase money, and, hence, is a substitute for a bill to enforce specific performance of the contract for the sale of the lot purchased by the vendee. If, therefore, the plaintiffs invoke the equitable powers of the court to compel the defendant to pay the purchase

price, they must be ready and willing to convey the lot of ground which they sold him. Equity will not permit them to recover the price agreed to be paid unless they can and will convey to the vendee the lot he purchased. The contention of the plaintiffs is that the defendant bought a stable property regularly numbered according to the system of street notation established by the city, and that, therefore, he is required to pay for and accept the lot on which the stable is erected. That contention, in the light of the conceded facts, we do. not regard as tenable. It can only be sustained by disregarding the description of the lot contained in the sales catalogue and hand-bills, and the other important facts disclosed by the pleadings. The decedent, as will be observed, owned at the time of her death two lots of ground, one fronting 50 feet, and the other 16 feet 8 inches, on Lancaster avenue, or a piece of ground aggregating a frontage on the avenue of 66 feet and 8 inches. The larger lot, fifty feet in width, was conveyed to her by a deed describing it as lying at a point 200 feet southeastwardly from Wyalusing street, and extending the same width between lines parallel with Wyalusing street to Merion avenue. In purchasing the other lot it was described as beginning at a point on the north side of Lancaster avenue 183 feet 4 inches southeastwardly from Wyalusing street. In advertising the fifty-foot lot for sale it will be observed that the plaintiffs described the lot in accordance with the description in the deed to their testatrix. The lot sold at auction was described as beginning at a distance of 200 feet from Wyalusing street on the north side of Lancaster avenue, containing in front or breadth, 50 feet, more or less, on the avenue, and extending between lines parallel with Wyalusing street 228 feet to Merion avenue. That is the lot that was purchased by the testatrix and was the lot sold to the vendee. Had the description in the hand-bills described the premises simply as "a valuable three-story brick stable 4545-4551 Lancaster avenue,"

there would be something in the plaintiffs' contention that it was "the brick stable property" which was advertised and which was sold to the vendee. If property is sold by a street number, the vendee takes what the number represents, and he cannot complain if there is a slight discrepancy in the frontage of the lot. But that is not this case. What we have quoted was simply the heading of the advertisement, and the description did not stop with it but set forth specifically the size of the lot which was to be sold. To locate on the ground the lot described in the hand-bills it is absolutely necessary to begin at a point 200 feet distant from Wyalusing street. The lot sold at auction fronted on Lancaster avenue "50 feet, more or less," and, there being no monuments on the ground referred to in the description in the hand-bills, it is obvious that the precise frontage on the avenue could not be definitely ascertained without commencing the survey on the avenue at the exact distance southeast of Wyalusing street named in the description. Had the description in the hand-bills described the property as beginning at a distance of 250 feet from Wyalusing street, and the frontage as "50 feet more or less" extending southeasterly from that point, the plaintiffs might have some ground for their contention. The vendee might then have been compelled to accept the stable lot notwithstanding it is about three feet less in width than the original lot purchased by the testatrix. The indefinite description of the frontage might then have been determined by locating it between the easterly line of the lot and the wall of the dwelling house erected principally on the other lot, which would have given the vendee about three feet less than the fifty-foot frontage on Lancaster avenue. But there is no such description in the advertisement of the premises sold, and unless that description is adhered to and the lot sold is located by beginning at a point 200 feet distant from Wyalusing street there can be no location of the lot on the ground.

It is urged on the part of the plaintiffs that the description in the hand-bills stated that the improvement was a three-story brick stable, and that, therefore, it necessarily follows that it was the lot occupied by the stable which was advertised and which was sold to the vendee. That contention, however, has no merit. The advertisement does not state the length of the stable nor what part of the lot it occupied. It might have been 10 feet or it might have been 50 feet in length, and there is nothing whatever to indicate its real length. When improvements on the premises are referred to in the advertisement of sale it does not necessarily follow that they cover the entire property to be sold. They are stated in the advertisement for the purpose of showing the value and not the size of the premises.

The conditions on the ground and the fact that the vendee saw the premises are not sufficient to prevent the latter from demanding a conveyance of the fifty-foot lot. The testatrix owned both lots and empowered her executors to sell all her real estate, coupled, however, with the condition that they should furnish her sister with a home, or not sell the other lot without the sister's permission. When the purchaser saw the advertisement he had the right to presume that in the exercise of the power conferred on the executors, they had provided a home for the sister and intended to sell the whole of the fifty-foot lot. Nothing contrary to that presumption was announced at the sale. Again: a simple inspection would not have disclosed to the defendant a discrepancy of three feet in the frontage of the premises. Nothing short of an actual measurement on the ground would have told him that the lot to be sold was less than fifty feet frontage or did not begin at a point 200 feet east of Wyalusing street. While the difference of three feet in the frontage of the lot on Lancaster avenue unquestionably would injuriously affect the value of the lot, it could not be detected with-

out a close examination made for the special purpose of determining the exact frontage of the premises.

There was no error in the description in the sales catalogue. The plaintiffs owned the land therein described at the time of the sale. The deed tendered the defendant does not contain the description in the advertisement but a description from a recent survey which was made by beginning at a point on the north side of Lancaster avenue, not 200 feet east of Wyalusing street, as set forth in the hand-bills, but at a point 202 feet 11¼ inches east of Wyalusing street. The deed conveys a lot, not containing a frontage on Lancaster avenue of 50 feet, more or less, between a point 200 feet east of Wyalusing street and the easterly line of the plaintiffs' premises and extending the same width to Merion avenue, but a lot having a frontage of only 47 feet and ¾ inches on Lancaster avenue and not extending the like width to Merion avenue. The lot sold was necessarily a rectangular piece of ground fronting on Lancaster avenue and extending back to Merion avenue, as it is described in the hand-bills as fronting on Lancaster avenue and extending between lines parallel with Wyalusing street to Merion avenue. The lot offered to be conveyed is not rectangular in shape but 50 feet wide on Merion avenue, 47 feet and ¾ inches on Lancaster avenue, having a broken and irregular western line, and containing a less quantity of land than the lot sold. The plaintiffs, therefore, tendered a deed conveying to the defendant, not the premises described in the advertisement of the sale and sold to him, but a lot of ground described from a recent survey and substantially different in description and value from the one purchased by the vendee.

The purchaser, through his counsel, states that he is willing to carry out his bargain and take the lot described in the advertisement and sold to him. So far as the record discloses he has done nothing to estop him in any way from demanding of the plaintiffs a con-

veyance of the lot as described in the hand-bills. If the plaintiffs are unwilling or unable to give the vendee what he purchased, they have no standing in law or equity to demand that the contract of sale shall be modified to the extent of permitting them to convey a different lot and recover the price bid by the vendee for the lot advertised. It is the contract in its original and not in its modified form that the plaintiffs have the right to demand shall be specifically enforced. When they tender performance of the agreement on their part, equity will compel performance on the part of the vendee.

The learned court below committed reversible error in entering judgment against the defendant for want of a sufficient affidavit of defense, and the judgment is now reversed with a procedendo.