Scanlon, Appellant, *v.* Iron City Sand and Gravel Company.

Argued October 5, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

William L. Jacob, with him C. W. Sypniewski, for appellant.

J. Garfield Houston, with him H. V. Blaxter, of Blaxter, O'Neill & Houston, for appellee.

OPINION BY MR. JUSTICE LINN, November 23, 1942:

Murphy's Island is in the Allegheny River in Armstrong County. When title to the island issued out of the Commonwealth in 1815, it was described by metes and bounds; in conveyances[1] since 1860, it is described as an island bounded by the Allegheny River. In 1927 the federal government[2] constructed dam number 5, and thereby raised the ordinary low water mark of the river to pool-full. " 'Pool-full,' indicating low water, is 'the surface of the water when it lies just even with the crest of the . . . dam when it is up.' " *McGunnegle v. Pittsburg & Lake Erie R. R.*, 213 Pa. 383, 386, 62 A. 988; also see *Darlington v. Pennsylvania R. R.*, 278 Pa. 307, 313, 123 A. 284. If, in consequence of the change, the then owner of Murphy's Island sustained any recoverable

---

[1] In the deed to plaintiff, the description is: "ALL that certain lot or piece of ground situate in South Buffalo and Gilpin Townships, Armstrong County, Commonwealth of Pennsylvania, containing Twenty-four (24) acres, more or less, being bounded all around by the Allegheny River, and being what is known as 'Murphy's Island.' "

[2] Pursuant to the Act of March 3, 1899, c. 425, sec. 10, 30 Stat. 1151, 33 U. S. C. A. sec. 403.

damage, his remedy, if any, was provided by the federal law. In *Cleveland & Pittsburgh R. R. v. Pittsburgh Coal Co.*, 317 Pa. 395, 398, 176 A. 7, we said: "If an improvement in navigation, lawfully made by the United States, permanently floods a riparian owner's fast land, his title is thereby divested for public use (improvement of navigation): *Pumpelly v. Green Bay Co.*, 13 Wall. 166; *U. S. v. Lynah*, 188 U. S. 445, 468, 470; *U. S. v. Cress*, 243 U. S. 316; *cf. Conneaut Lake Ice Co. v. Quigley*, 225 Pa. 605, 612. The same divestiture must also result from the permanent additional flooding of land formerly submerged (and now navigable), even though the owners' title to the submerged land theretofore was absolute."

On May 17, 1938, the federal government licensed defendant to take sand and gravel from the bottom of the river. Thereafter, in December, 1938, the plaintiff, for $2,000, purchased the island. In 1940, dredging was done on part of the river bed between the ordinary low water mark as it appeared on the island before the erection of the dam and the new mark created by pool-full. Plaintiff alleged that defendant's dredging damaged him in the sum of $50,000 and that he was entitled to recover three times that sum pursuant to section 812 of the Act of June 24, 1939, P. L. 872, 18 PS Supp. section 4812. The parties signed a stipulation of facts for preliminary determination of questions of law. Judgment was entered for defendant and this appeal followed.

Plaintiff acquired absolute title to the island to ordinary high water mark (*Black v. American International Corp.*, 264 Pa. 260, 262, 107 A. 737) but between that line and the ordinary low water mark, his title was qualified, and one of the qualifications was that his riparian rights were subject to the improvement of the stream by the state government or the national government: *Black v. American International Corp., supra; U. S. v. Chicago, M., St. P. & P. R. R. Co.*, 312 U. S. 592. The ordinary low water line when he acquired the island

538

was at pool-full. Defendant has not interfered with plaintiff's possession above that line and is not liable for the dredging complained of.

Judgment affirmed.