Jack ROSE

v.

MITSUBISHI INTERNATIONAL CORPORATION et al.

Civ. A. No. 74–316.

United States District Court, E. D. Pennsylvania.

Nov. 4, 1976.

Morris R. Brooke, Philadelphia, Pa., for plaintiff.

Thomas O'Neill, Jr., Philadelphia, Pa., Charles F. Schirmeister, Ronald I. Paltrowitz, New York City, for Mitsubishi.

Freedman, Borowsky & Lorry, Philadelphia, Pa., Stuart A. Schlesinger, New York City, for Raritan Corp. and Richard Kates.

## MEMORANDUM AND ORDER

CAHN, District Judge.

Plaintiff, Jack Rose, is suing for money damages for breach of an alleged contract in the form of a letter of intent. The matter is before the court on the motion of Mitsubishi International Corporation ("MIC") for summary judgment under Fed. R.Civ.P. 56.

In 1973, plaintiff had an option enabling him to purchase from Northern Metal Company a deep-water port facility located on the Pennsylvania side of the Delaware River. On March 29, 1973, MIC and Federal Steel Corporation ("Federal") executed a letter of intent to plaintiff which plaintiff approved the same day. The letter of intent provided for contribution by MIC of funds required to exercise plaintiff's option. It also provided for the formation of a new corporation by MIC and Federal which would participate with plaintiff in a joint venture involving the deep-water port facility. The obligation of MIC and Federal to provide financing was subject to certain conditions including:

> "6. A reputable United States title insurance company shall issue title policies indicating clear and marketable title to the real estate and interests in real estate referred to herein and indicating that the same can continue to be used in the future for the purposes for which they are presently in use."

The letter of intent provided that the obligations of the parties were to be completed by May 15, 1973, but this deadline was extended by mutual agreement until May 22, 1973. On May 21, 1973, MIC notified plaintiff that it would not proceed under the letter of intent. Thereafter, plaintiff instituted this action against MIC, Richard Kates, an officer of Federal, and Raritan Corporation,[1] the parent of Federal. Jurisdiction is based upon diversity of citizenship.[2]

In its motion for summary judgment, MIC contends first that the letter of intent is not, as a matter of law, a binding contract. The weight of the case law[3] provides that the question of whether a particular document constitutes a legally binding agreement is to be determined as a matter of fact by the trier of facts. *Field v. Golden Triangle Broadcasting, Inc.*, 451 Pa. 410, 305 A.2d 689 (1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974); *Associated Hardware Supply Co. v. Big Wheel Distrib. Co.*, 355 F.2d 114 (3d Cir. 1966); *Melo-Sonics Corporation v. Cropp*, 342 F.2d 856 (3d Cir. 1965). Therefore, summary judgment cannot be entered on the ground that, as a matter of law, the

---

1. Counsel for Raritan Corporation stated at the oral argument that he will move for dismissal on the ground that Raritan's obligations are those of a surety and the real party in interest is Federal, which is not diverse to the plaintiff.

2. 28 U.S.C. § 1332.

3. Pennsylvania law is applicable. In a diversity case, the federal court applies the conflicts law of the forum state. *Klaxon v. Stentor Elec.*

*Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania courts would apply the law of Pennsylvania, because that is where the contract was to be performed and was made, and is the situs of the real estate. *See Danz Estate*, 444 Pa. 411, 283 A.2d 282 (1971); *Neville Chemical Company v. Union Carbide Corporation*, 422 F.2d 1205 (3d Cir. 1970), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970).

letter of intent is not an enforceable contract.

The second thrust of MIC's summary judgment motion is that the plaintiff was unable to comply with condition 6 of the letter of intent which required the issuance by a reputable title insurance company of "title policies indicating clear and marketable title to the real estate and interests in real estate" to be purchased in accordance with the option. The title report specifically set forth the following exception:

> "14. Subject to the laws and authority of the Federal and State Governments, their political subdivisions and agencies, over portion of premises extending beyond the low water mark, to regulate commerce and navigation, as well as to exert governmental title and ownership in the area lying beyond the original low water mark of Delaware River."

█ Under the law of Pennsylvania pertaining to navigable waters a riparian owner's absolute title extends only to the high water mark. *Flanagan v. City of Philadelphia*, 42 Pa. 219 (1862). Between the high and low water lines the owner's title to the soil is qualified, being subject to public rights of navigation and fishing, and subject to improvement of the stream as a public highway. This qualified right of the public is sometimes referred to as a "navigational servitude". *Freeland v. Penna. Railroad Co.*, 197 Pa. 529, 47 A. 745 (1901); *Wainwright v. McCullough*, 63 Pa. 66 (1869); *United States v. Pennsylvania Salt Mfg. Co.*, 16 F.2d 476 (E.D.Pa.1926), aff'd, 30 F.2d 332 (3d Cir. 1929).

█ Beyond the original low water line the Commonwealth holds the title and its right is not merely a servitude. The surveys and affidavits filed in support of MIC's motion for summary judgment reveal that a portion of the premises to be conveyed extends beyond the original low water mark of the Delaware River. The exception in the title report refers to both the navigational servitude between the high and low water marks and ownership by the Commonwealth beyond the low water mark.

Applying the foregoing principles, MIC urges that the case of *Black v. American International Corp.*, 264 Pa. 260, 107 A. 737 (1919) requires entry of summary judgment in its favor. In *Black*, the plaintiff brought a price action to compel the defendant to pay the purchase price for 54.91 acres of land forming part of Hog Island in the Delaware River. The defendant buyer claimed that title to the property was in the Commonwealth of Pennsylvania and not in the plaintiff because the property was beyond the original low water line in the Delaware River. Although the trial court rendered judgment for Black, the Supreme Court of Pennsylvania reversed as a matter of law, holding that Black's title to the property was neither clear nor marketable. In *Black*, it was undisputed that part of the land in question was developed by dumping dredged materials. The Supreme Court stated at page 262, 107 A. at page 738:

> "Below its ordinary low water the ownership of the soil under the river is in the Commonwealth, the title of the abutting riparian owner extending only to ordinary low water mark, subject to the rights of navigation, fishery, and improvement of the stream between high and low water marks . . . ."

The Supreme Court of Pennsylvania concluded that the title was sufficiently doubtful to excuse performance by the defendant.

█ Ordinarily, marketable title is not an absolute concept but may depend upon parol evidence of adverse possession or prescriptive holding as well as other facts. *County of Berks v. Bull*, 61 Berks 88 (Pa. County Ct.1969); see 77 Am.Jur.2d, *Vendor & Purchaser*, § 139. In such a situation, summary judgment would not be proper. Here, however, the parties have specifically contracted for the issuance of a title insurance policy indicating clear and marketable title to the real estate involved. Since the express condition in the letter of intent not only requires the issuance of a title policy "indicating" clear and marketable title, but further "indicating" that the real estate can continue to be used in the future for the

purposes for which it is presently used, I find that this condition is not satisfied. Therefore, MIC is entitled to summary judgment in its favor on the issue of whether the condition was satisfied.

 It is irrelevant that plaintiff offers to prove at trial that the exception can be cured and is "not serious". The parties expressly contracted for a title policy insuring clear and marketable title, and the policy tendered does not, in light of *Black, supra*, satisfy the condition. In *Butler v. Santosus*, 64 Mont.Co.L.R. 74, 76 (1947), the court held:

> "The vendor contracted to convey a title 'such as will be insured at regular rates by Land Title & Trust Company'. The company has indicated its refusal to insure the title by noting the 'easement' on its settlement certificate. Such a provision is valid and binding upon the parties, and obligates the vendors to tender a title in strict accordance with their obligation under the written agreement. The decision of the title company is therefore conclusive as to the title and the agreement does not simply call for a good and marketable title determinable by a court of law: *Perkinpine v. Hogan*, 47 Pa.Super. 22 (1911)."

In *Butler* the contract referred to a specific title insurance company by name. In the within case the parties did not specify any particular title insurance company. Ordinarily, in such a situation, the failure of one title insurance company to issue the policy without conditions is not determinative of whether the condition is violated. 77 Am. Jur.2d, Vendor and Purchaser, § 130 (1975). However, by appearing on the day of settlement with a title policy containing an exception, the plaintiff clearly did not meet the terms of his obligation under the letter of intent to obtain at settlement a title report from any reputable title company indicating clear and marketable title. *See LaTorre v. Edelsman*, 22 Pa.Dist. 845 (1913).

 Here, the plaintiff is in actuality the buyer from Northern Metal Company and would ordinarily be required to provide and pay for title insurance coverage. Therefore, although the letter agreement of March 29, 1973, does not specify who is required to provide the title insurance, the only reasonable interpretation of the transaction is to place that responsibility upon the plaintiff. The plaintiff did not meet this responsibility and, therefore, summary judgment must be entered against him on this issue.

 Plaintiff raises two additional matters in support of his contention that summary judgment is not proper. He contends that MIC knew from the beginning of the negotiations about the exceptions in the title policy since a prior title report was called to its attention. The law of Pennsylvania, however, is contrary to plaintiff's argument. In *Ziskind v. Bruce Lee Corp.*, 224 Pa.Super. 518, 523, 307 A.2d 377, 379 (1973), it was held:

> "[A] vendee in a contract for the sale of real estate may rely upon an express covenant to convey title 'free and clear of all encumbrances', and this has been so even though the vendee knew of an encumbrance which affected title."

 Plaintiff also claims that he is entitled to a trial on whether or not MIC waived condition 6 in the agreement of March 29, 1973. The Restatement of Contracts § 297 states the requirements for the excuse of a condition by waiver:

> "A promisor whose duty is dependent upon performance by the other party of a condition or return promise that is not a material part of the agreed exchange can make that duty independent of such performance, in advance of the time fixed for it, by a manifestation of willingness that the duty shall be thus independent. Such a waiver, unless it is a binding promise within the rules for the formation of contracts, can be retracted at any time before the other party has materially changed his position in reliance thereon, but not afterwards."

 Clear and marketable title indicated by title insurance, as stated in condi-

tion 6 of the letter of intent, is "a material part of the agreed exchange". Its materiality as a matter of law is shown by the rule that a purchaser of land is not required to take the title offered when an easement exists which is a breach of a covenant for a conveyance free from encumbrances. *Volkert v. Swan*, 197 Pa.Super. 576, 179 A.2d 274 (1962). Such a condition, as opposed to a mere matter of performance such as a settlement date, cannot be waived.

"If performance of the condition is a material part of the agreed exchange, an agreement to be liable in spite of the non-performance of the condition involves to so great a degree a new undertaking that the requisites for the creation of a new contract must exist." Restatement of Contracts § 297, comment *c.* at 440 (1932). While plaintiff has argued the question under the name "waiver", he alleges facts which might be interpreted as the creation of a new contract. Paragraphs 11 and 12 of the affidavit of Jack Rose dated October 17, 1975, and attached to plaintiff's memorandum in opposition to MIC's motion for summary judgment, state:

"11. On May 10, 1973 and again on May 14, 1973 representatives of Mitsubishi requested a one week extension until May 22 of the May 15 deadline. On both of those occasions Mr. M. Murakami, Mitsubishi's Manager of Transportation and Insurance, acknowledged the existence of a binding letter of intent. Murakami further assured plaintiff that the execution by Mitsubishi's President of the March 29, 1973 letter represented a final decision on Mitsubishi's part to purchase the assets of Northern Metal Co., that there was no question but that Mitsubishi would execute the Joint Venture Agreement, and that the extensions were requested solely to complete 'paper work' and for no other reason. Indeed, plaintiff specifically recalls Murakami pleading with him for the requested delay on the basis that 'we' [i. e. plaintiff and Mitsubishi] were going to be working together for a long time.

"12. In order to get plaintiff further to extend from May 22, to May 24 the deadline for signing the Joint Venture Agreement, Mitsubishi representatives made to plaintiff's representatives the same assurances described in paragraph 11 hereof."

This might be interpreted as a new contract with consideration in that the extension of time for signing the joint venture agreement was given in return for a promise that MIC would sign regardless of the title problem. MIC has submitted, attached to its reply to plaintiff's memorandum in opposition to MIC's motion for summary judgment, the affidavit of M. Murakami which states that MIC never made such a promise and in fact told Rose that there was a problem with the title report exception. These facts would negate a new contract. But the court cannot resolve the factual dispute by summary judgment. The finder of fact must decide, first, whether the letter of intent was a binding contract and, second, whether a new contract was made in which MIC promised unconditionally to sign the joint venture agreement.

Partial summary judgment will be granted in favor of MIC, deciding, as a matter of law, that condition 6 of the letter of intent of March 29, 1973, was not satisfied, that plaintiff did not meet his responsibility to satisfy that condition, and that MIC did not waive, or in any way make ineffective, condition 6 of the letter of intent when it signed the letter of intent knowing of the exception concerning the Commonwealth's title and its navigational servitude contained in a title report or reports.