## Speakman *versus* Forepaugh.

44   363
158   428

44   363
162   467

44   363
177   290

44   363
192   111

*Purchaser not bound in Court of Equity to accept doubtful Title.— What Titles are doubtful.—Presumption of Waiver by Vendee.*

1. A purchaser under articles of agreement, cannot be compelled, in a court of equity, to accept the title if doubtful or unmarketable.

2. A title is doubtful that exposes the party holding it to litigation.

3. Thus where the vendor's title to a lot was by purchase at sheriff's sale, as the property of one who had two years before sold it to another, but the deed had not been recorded until after the sale ; on bill for specific performance to compel a vendee under articles to comply, it was *held*, That as the vendee was liable to contest the unrecorded and outstanding title, he could not be compelled in equity to take the property.

4. In an executory contract for the sale of land, the vendee is not presumed to waive any right which the articles standing alone would give him : hence, in the absence of express proof that he agreed to run the risk of defects in title, he is not precluded from refusing to execute the contract, because he knew of a prior deed before the agreement was made, or because the executory contract contained no specific covenant against that title.

CERTIFICATE from the Court at *Nisi Prius*.   In Equity.

This was a bill filed by Thomas H. Speakman, for the specific performance of an agreement for the purchase from him by William F. Forepaugh, of a lot of ground in the city of Philadelphia.

Upon bill, answer, and replication being filed, an examiner was appointed to take testimony.   The report of the examiner being filed, and the cause called for argument, the court referred the whole subject to Samuel C. Perkins as master to make report thereon, and also to report the form of a decree.   The master reported a decree dismissing the bill with costs ; to which both parties filed exceptions.

The facts of the case as found by the master were as follows :—

On the 26th of August 1859, the complainant and defendant entered into a written agreement, under seal, whereby the former agreed to sell and convey to the latter, and the latter to buy " a certain lot of ground of the said Thomas H. Speakman, on the east side of Sixth street, 127 feet north of Jefferson street, 18 feet front and 92 feet deep, for the price of $1000 ; $250 thereof to be paid in cash on the execution of the deed (say within ten days), and the balance to be secured upon the property by bond and mortgage in the usual manner, payable one-half thereof in six months, and the balance in twelve months from the date, with interest."

On the 4th of November 1859, complainant tendered to defendant, at his place of business in the immediate neighbourhood of the above-described premises, a deed of bargain and sale, dated November 3d 1859, executed by complainant and his

wife, duly acknowledged the same day, conveying in fee a lot on the east side of Sixth street, at the distance of "about 127 feet" northward from Jefferson street, containing in front on Sixth street 18 feet, and in depth eastward of that breadth, between parallel lines at right angles with Sixth street, 92 feet 1¾ inches more or less, bounded northward and eastward by other parts of the larger lot whereof the thereby granted lot was part, southward by ground now or late of Benjamin F. Hedges, and westward by Sixth street, and recited therein as being the same premises which William H. Kern, Esq., high sheriff of Philadelphia, by deed-poll dated 11th of June 1859, duly acknowledged in open District Court, and recorded in Book V, No. 2, p. 83, &c., granted and conveyed to the complainant in fee; and at the same time tendered to defendant for execution a bond and mortgage upon the same last-described property for the amount, and payable in the manner set forth in the contract of sale.  The defendant declined accepting the deed and executing the bond and mortgage, saying that he was not anxious to buy a lawsuit; that he was advised by his father not to take the property, as his (defendant's) conveyancer had said the title was defective.

The complainant alleged in his bill that, on the 7th of March 1859, he had purchased at sheriff's sale, a lot on the east side of Sixth street, at the distance " of 127 feet or thereabouts," north from Jefferson street, containing in front on Sixth street 18 feet, and in depth 92 feet 1¾ inches more or less, for which a deed was duly executed, acknowledged, and delivered to him June 11th 1859, by the sheriff, which deed was duly recorded; said lot being erroneously mentioned in said deed as being situate at the distance of 161 feet northward from Jefferson street, but being otherwise correctly and perfectly located, described, and identified by boundaries and adjoiners, and by reference to prior conveyances and deeds for adjoining properties, so that its identity could not be doubted or questioned.

The bill then set forth the agreement of 26th of August 1859, alleged complainant's readiness to perform said agreement, the tender of the 4th of November 1859, and the refusal of the defendant to accept the deed and comply with said agreement on his part.  And charged as the grounds alleged by defendant for his refusal, that complainant cannot make a good and valid title to said lot, inasmuch as the said sheriff's deed, and the proceedings upon which it is founded, describe the lot as 161 feet north of Jefferson street, whereas it is in fact but 127 feet north of Jefferson street; and inasmuch also as Osborn Conrad, as whose property the same was taken in execution and sold by indenture, dated April 1st 1857, recorded June 3d 1859, granted and conveyed all his title and interest in said lot to Elizabeth C. Jones in fee.

The bill then averred as to the erroneous description of the lot with reference to its distance northward from Jefferson street; that the lot is sufficiently and perfectly described and identified irrespective of that distance; and set out various conveyances alleged to be in the chain of title, with the recitals of title therein severally contained, and also the deed of conveyance to Benjamin F. Hedges for the lot at the south-east corner of Sixth and Jefferson streets, the alleged southern boundary of the lot in question. That as to the conveyance from Osborn Conrad to Elizabeth C. Jones, the same was not recorded till after the date of the sheriff's sale to complainant. That no notice thereof was given at the sheriff's sale or otherwise; nor had said Elizabeth C. Jones, or any one for her, ever any possession of said lot. That all the circumstances in regard to the error in the deeds, as to the distance of said lot northward from Jefferson street, and as to the deed to Elizabeth C. Jones, were fully known and explained to the defendant at the time of the execution of the agreement; and at the same time, as well as previously, to William F. Forepaugh, Sr., the agent of defendant in negotiating the purchase. That said agreement was not entered into until a brief of title had been prepared, and the opinion of Eli K. Price, Esq., obtained, that said title was good and sufficient; that said William F. Forepaugh, Sr., made affidavit as to the possession of the lot. That the making of the agreement was, by an understanding between complainant and Mr. Forepaugh, Sr., delayed until such opinion should be obtained by complainant. That the defendant, at the time of the making of said agreement, had actual possession of said lot as tenant of complainant under a verbal lease made through his agent, Mr. Forepaugh, Sr.

The prayer was for specific performance of the agreement of August 26th 1859, that the defendant may be decreed "to accept a conveyance for the said premises, and pay and secure to complainant the purchase-money therefor in accordance with the terms of said agreement, and for general relief."

The answer admitted the execution of the agreement of August 26th 1859, but alleged that at the time it was entered into, complainant represented to defendant that he had a good and marketable title in fee simple to the whole of the said premises, free from all encumbrances; and that, relying upon the statements and representations of complainant as to the title, he (defendant) was induced to sign said agreement, which complainant had prepared in his own handwriting, but with the clear, distinct, and positive understanding and agreement on the part of the complainant, that the deeds and other evidences of title should be submitted to defendant's conveyancer for examination, and if the title was satisfactory to and approved by him, the contract should be mutually binding, and should be executed according to

its stipulations; but not otherwise. That in pursuance thereof, the deeds and other evidences of title were submitted to defendant's conveyancer, with instructions to prepare a deed for said premises, if complainant's title thereto appeared sufficient, and the lot was free from encumbrances. That upon examination of complainant's title, it appeared, and so defendant's conveyancer informed him, that the title of complainant was not in anywise deduced to a lot commencing 127 feet north of Jefferson street, but that the deed on which complainant relied, and had produced in support of his title, was for a lot commencing 161 feet north from Jefferson street, and that he (defendant) was not bound to take the title. That even if the title of complainant to said lot had been sufficient in law, yet complainant had never possession of the same, nor could he at any time since the making of said agreement have given possession of the same, for the reason that a part thereof was and had been for many years adversely held and built upon.

The defendant denied that he ever held possession of said lot or any other lot of ground as tenant of the complainant, or that he ever authorized any one to enter into a lease with complainant for the said or any lot of ground, or that complainant tendered him any deed whatever for said lot within the time mentioned in said agreement, to wit, within ten days from the date thereof.

The proofs disclosed the following material facts :—

By deed dated April 10th 1834, Joseph Smith and Thomas Weaver granted and conveyed to Benjamin F. Hedges, in fee, a lot of ground at the north-east corner of Sixth and Jefferson streets, commencing at said corner, thence eastward 178 feet 10½ inches to Mifflin street, thence northward along Mifflin street 131 feet 7 inches, thence westward by other ground of Weaver and Smith at right angles with Sixth street, 182 feet 1¾ inches, thence south along Sixth street 127 feet, to the place of beginning.

Upon the north-west corner of Jefferson and Mifflin streets, and covering part of this last-described lot, the defendant, a few months prior to the date of the agreement of August 26th 1859, had purchased a lot of ground; upon which he had erected a factory, which he was then occupying. Fronting on Sixth street, and commencing at the north-east corner of Sixth and Jefferson streets, there was at the date of said agreement, and had been for over twenty-five years prior thereto, a row of eight adjoining houses, which extended northward along Sixth street a distance of 127 feet 9½ inches from the corner of Jefferson street. The northernmost wall of these buildings had a right to be built 4¼ inches over the line for a party-wall, so that the actual encroachment upon the lot situate 127 feet northward from Jefferson

[Speakman v. Forepaugh.]

street was but 4¼ inches, an encroachment which had existed adversely for over twenty-five years.

By deed dated 28th May 1834 (Smith and wife having in the mean time conveyed all his undivided moiety in the property adjoining the Hedges lot to the north to his co-tenant Weaver), Thomas Weaver granted and conveyed to N. W. Ellis and John Longstreth, in fee, a lot of ground on the east side of Sixth street, 57 feet 1 inch south from Oxford street, 108 feet front, and in depth on the south line thereof 182 feet 1¾ inches to Mifflin street, bounded on the south by ground of Benjamin F. Hedges.

By deed dated 17th September 1834, Ellis and Longstreth granted and conveyed to Samuel Black, in fee, a lot on the east side of Sixth street, 129 feet 1 inch south of Oxford street, 36 feet front, and in depth on the south line thereof 182 feet 1¾ inches to Mifflin street; bounded south by ground of Benjamin F. Hedges, being the southernmost 36 feet of the large lot granted by Weaver to Ellis and Longstreth,—reserving a yearly ground-rent of $60. The distance given in this deed southward from Oxford street would locate the lot 36 feet front, as commencing 125 feet north of Jefferson street, whereas there was room for a lot of only 33 feet 6¾ inches between the line of the Hedges lot as actually built on and a point 129 feet 1 inch south of Oxford street. This discrepancy as to the additional 2 feet can make no difference as against the grantors of the lot, since the 36 feet lot is described as the southernmost 36 feet of a large lot. The grantors must lose these 2 feet from the northernmost and remaining part of the large lot.

By deed endorsed of the same date, Ellis and Longstreth assigned the said ground-rent to David Ellis in fee.

By deed dated June 4th 1840, Samuel Black granted and conveyed to said David Ellis, in fee, the said lot, 36 feet front, out of which the ground-rent was reserved, whereby said ground-rent became merged and extinguished. The description of the lot in this deed is the same as that in the deed from Ellis and Longstreth to Black, and to which deed the recital of title refers.

By deed dated November 11th 1844, David Ellis granted and conveyed to S. S. Jones, in fee, a lot on the east side of Sixth street, 161 feet north of Jefferson street, 18 feet front and 92 feet 1¾ inches deep; bounded north and east by other parts of the larger lot, of which the thereby granted lot formed a part, and south by ground now or late of Benjamin Hedges; being part of the southernmost 36 feet of the above-described large lot, and the recital of title referring in detail to the several deeds hereinbefore mentioned from Weaver and wife to Ellis and Longstreth, Ellis and Longstreth to Black, same to D. Ellis, and Black to D. Ellis. Benjamin F. Hedges never owned the property

forming the southern boundary of a lot commencing at the distance of 161 feet north of Jefferson street.

The Oxford street mentioned in the deeds was Old Oxford street, now and for many years vacated; but when it was first vacated did not appear, but it would seem probable that it was prior to the deed of November 11th 1844, when the distance northward from Jefferson street was first substituted for the distance southward from Oxford street, in describing the locality of the property.

The aggregate of the fronts of the lots between the north side of Jefferson street and south side of Oxford street, as called for by the deeds, exceeds the actual distance as measured on the ground by 2 feet.

By deed endorsed on the last-mentioned deed, and dated January 1st 1845, S. S. Jones granted and conveyed to Osborn Conrad, in fee, the premises as therewithin particularly described.

Upon the 1st of April 1857, Osborn Conrad executed and acknowledged a deed to Elizabeth C. Jones, of Montgomery county, Pennsylvania, for a lot on the east side of Sixth street, commencing 125 feet northward from the north side of Jefferson street, 18 feet front by 92 feet $1\frac{3}{4}$ inches in depth, bounded northward and eastward by other parts of the larger lot, of which the thereby granted lot is part, south by ground late of Benjamin F. Hedges. This deed contains no recital of title, and was not recorded till June 3d 1859.

Upon the 7th of March 1859, the complainant purchased at sheriff's sale, a lot levied on, condemned, and sold as the property of Osborn Conrad, which lot was described as to distance, northward from Jefferson street (161 feet) and boundaries, precisely as in the deed from David Ellis to S. S. Jones, Conrad's grantor, and the date of the latter's deed to Conrad, with the book and page of recording, was set forth in the recital of title in the advertisement and all the proceedings.

Upon the 11th June 1859, the sheriff executed, acknowledged, and delivered to complainant a deed for the property so purchased by him, which deed is duly entered among the records of the District Court.

There was testimony taken under objection to show that the understanding and agreement of the parties was, that the title to the lot should be approved by Mr. Joseph H. Siddall, the defendant's conveyancer, and the admissibility of the evidence was urged upon the ground that it was to show that material terms had been omitted from the agreement; and also that the written agreement had been obtained in its present form by fraud, accident, or mistake.

The defendant, in his answer, thus set up three grounds of objection to the title: 1st. The misdescription of the location of

[Speakman *v.* Forepaugh.]

the lot, arising from the error in the number of feet given as the distance northward from Jefferson street. 2d. The existence of the deed from Osborn Conrad to Elizabeth C. Jones, for the lot one hundred and twenty-five feet northward from Jefferson street. And 3d. The failure in quantity arising from the houses on the Hedges property, overrunning the southern boundary of the lot contracted for. The agreement was drawn up by complainant himself, some time prior to its execution. At the time of its execution, not only the defendant, but also his said agent, who had conducted the whole negotiation, was present. This agent was the only witness examined to show the omission complained of; but in his testimony nothing appeared of what took place at the time the agreement was executed.

The complainant prepared a brief of title to the premises in question, setting forth all the deeds and conveyances above-mentioned, except only the deed to Hedges, and including Conrad's deed to Elizabeth C. Jones, and the docket entries and proceedings upon which the sheriff's deed to complainant was founded, and containing a note of the error in the deed from Ellis to Samuel S. Jones, in respect to the distance northward from Jefferson street of the lot therein described and granted. Upon this brief, accompanied by two affidavits, Eli K. Price, on the 24th of August 1859, two days prior to the contract of sale, gave a written opinion that the title to the lot described at the head of the brief was sufficiently deduced to complainant in fee simple, and that he could convey a good title to a purchaser in fee simple. The lot was described at the head of the brief as on the east side of Sixth street, 127 feet north of Jefferson street, 18 feet front, 92 feet 1¾ inches deep, bounded north and east by other parts of the larger lot whereof it was part, and south by ground now or late of Benjamin F. Hedges. The affidavits were, 1st, that of Thomas P. Potts, Esq., made August 13th 1859, that no notice was given at the sheriff's sale of the deed from Conrad to Elizabeth C. Jones; and 2d, that of Mr. Forepaugh, Sr., made August 18th 1859. This latter affidavit contained the following clause, to wit: "The lot lately owned by Osborn Conrad, immediately north of the ground heretofore held by Benjamin F. Hedges, on the east side of Sixth street above Jefferson, was vacant and not occupied by any person until about the month of May last, when it, with other lots, was fenced in, and is now occupied by William F. Forepaugh, Jr., the son of this deponent, as the tenant of Thomas H. Speakman."

It appeared that some time prior to the sheriff's sale, and subsequently to his purchase of the lot at the north-west corner of Jefferson and Mifflin streets, the defendant, through his father, had put up a board fence enclosing three lots fronting on Sixth street, immediately northward of and adjoining the row of

8 WR.—24

[Speakman *v.* Forepaugh.]

eight houses at the north-east corner of Sixth and Jefferson streets. Prior to his putting up this fence, which was done solely for his own accommodation and the protection of his own property at the corner of Jefferson and Mifflin streets, the defendant, through the same agent, his father, endeavoured to find out who were the owners of these three lots then vacant and unenclosed. After much difficulty, he found the owners of the northernmost two of the three lots, and obtained their permission to put up the fence. The owner of the southernmost of the three lots he could not find, but took the liberty at the same time of enclosing it with the others, expecting the owner would turn up. The main point in the affidavit, and which was not attempted to be denied, was as to the possession, the actual possession of the lot in question at the time of the sheriff's sale, which it was a matter of importance to settle, in considering the effect of the deed to Elizabeth C. Jones. For this purpose it was obtained and used.

The master was of opinion that the title of the complainant to the lot on the east side of Sixth street, 127 feet north of Jefferson, 18 feet front by 92 feet 1¾ inches deep, was a good title, with the exception of the 4¼ inches encroached upon by the wall of the property adjoining to the south, as mentioned above; but that upon the whole case the complainant was not entitled, in a court of equity, to have a decree for the specific performance of the contract of sale of August 26th 1859, and that his bill should be dismissed with costs. He accordingly further reported the form of a decree, to all which exceptions were filed for complainant.

At the second hearing, both parties, with their respective counsel, attended, when the counsel for the complainant proposed to show that no *laches* had existed on the part of the complainant; and for this purpose offered in evidence the records of two several actions for damages brought in the District Court for the city and county by complainant against the defendant upon the very agreement in question, and urged his right so to do on the ground that the point of *laches* had been first made by the master in his report.

The counsel for the defendant objected to and protested against the admission of the evidence, on the ground that the master must be confined to the evidence taken before the examiner.

The fact was as stated by the counsel, that the point of *laches* was not touched upon in the argument, but was first made by the master in his report. In view of the circumstances of the case, the master admitted the evidence under the final clause of Rule 73, which specifies the powers of a master.

It appeared from these records that, November 5th 1859, complainant commenced an action of covenant against the defendant in the District Court to December Term 1859, No. 1866; that,

December 30th 1859, he filed a *narr.*, declaring for a breach of the agreement or contract of sale of August 26th 1859, between himself and the defendant; on the same day that he filed his *narr.*, he entered a rule to plead; the defendant duly pleaded, and February 21st 1860, the case having been called for trial, the plaintiff suffered a nonsuit. This judgment of nonsuit was satisfied of record October 15th 1860.

March 3d 1860, complainant commenced another action of covenant against the defendant in the District Court to March Term 1860, No. 496. March 10th 1860, a *narr.*, declaring for the same cause of action as the former suit, was filed, and a rule to plead entered; pleas and replications were duly filed, and the case put at issue. September 29th 1860, this suit was marked of record " Discontinued," and the same day the present bill was filed.

After a consideration of the other exceptions filed by complainant, and of the argument thereon, the master was unable to arrive at any different conclusion from that stated in his report, and the decree was allowed to stand as originally reported. Other exceptions were filed by the defendant, but the views of the master remained unchanged.

On argument of the exceptions, the learned judge at Nisi Prius made a decree dismissing the complainant's bill with costs; which was the error assigned here.

*E. Spencer Miller*, for plaintiff in error.

*A. S. Letchworth*, for defendant.

The opinion of the court was delivered, March 2d 1863, by

STRONG, J.—The article of agreement, standing by itself, bound the complainant to make a good title to the defendant. Such was its legal effect, and unless the defendant has waived the rights assured to him by it, he may insist upon such a title both in a court of law and in a court of equity. But when a vendor goes into a court of equity and asks for a decree that his vendee by articles shall specifically perform the agreement, he is bound to offer a title that is more than what the court may pronounce good. That is sufficient for a court of law, but it is an invariable rule in chancery that a purchaser shall not be compelled to accept a doubtful title, or what in some of the cases is called an unmarketable title. And every title is doubtful which invites or exposes the party holding it to litigation. In the opinion of the court it may be good, but if its validity depends upon some facts resting in the knowledge of some party or writings not before the court,—If there be a colour of an outstanding title which may prove substantial, though there is not enough in evidence to enable the chancellor to say that it is so, a purchaser will not be held to take it, and encounter the hazard of litigation

with an adverse claimant. These are familiar principles. The question for us is how far they are applicable to this case.

We have no hesitation in saying that for aught that appears, the complainant's title to the lot agreed to be sold, is in our own opinion good. The partial misdescription in the deeds of its distance from Jefferson street is not even a cloud upon it, in the light of all, which the deeds contain to identify it. When lands are described by distances and adjoiners, and there is a discrepancy, the former always gives way, for the reason that it is easier to be mistaken in a measurement than it is in a boundary. If, therefore, the boundaries are correctly described in the deeds, as is the case in the line of the complainant's title, it matters not that there was an inaccuracy in stating the distance of the lot from Jefferson street. The thing to be ascertained is, whether the property offered to the defendant, is the identical property which Osborn Conrad (of whose title the complainant had become the purchaser at sheriff's sale), had obtained by deed from S. S. Jones. That it was is manifest, not only by the de scription of the adjoiners, but by the recitals of title.

And so far as appears in the case, the title of the complainant is good even as against Elizabeth C. Jones. Osborn Conrad, whose title he purchased at sheriff's sale on the 7th of March 1859, had indeed sold and conveyed the lot to Elizabeth C. Jones on the 1st of April 1857. She was therefore the owner of the' property at the time when it was sold as the property of Conrad. But she had not placed her deed upon record, and she was not in actual notorious possession. She caused her deed to be recorded not until the 3d of June 1859, which was after the sheriff's sale, though eight days before the sheriff's deed was made to the complainant. It must be admitted that a purchaser at sheriff's sale, who has not received his deed, is not within the words of the recording acts, which declare that deeds and conveyances not proved and recorded within six months after their execution, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valuable consideration, unless they be proved and recorded before the proving and recording of the deed or conveyance under which such subsequent purchaser or mortgagee shall claim. But, in Stewart *v.* Freeman, 10 Harris 120, he is declared to be within their spirit, and entitled to their protection. And it was said that the time when the sheriff's sale is made, not the date of the sheriff's deed nor of its acknowledgment, is the period at which the state of the possession and the record becomes material. On the authority of this case the complainant's title is the better as between him and Elizabeth C. Jones, the earlier grantee, if there be nothing more to impeach it than appeared in evidence before the master.

But is it a marketable title, such an one as a court of equity

[Speakman *v.* Forepaugh.]

will pronounce not only apparently good, but free from all reasonable doubt? We have already said that a title is regarded as doubtful when its condition invites litigation. A purchaser will not be compelled to take it if thereby he becomes exposed to a lawsuit. Now, it is impossible for us, sitting in equity, to overlook the fact that there is an outstanding paper title which is older than that of the complainant, and which, if not the better, must yield to the complainant's only because he was a *bonâ fide* purchaser without notice of it. The validity of this title depends upon the question whether he had notice of the conveyance to Elizabeth C. Jones when he bought. That is a question of fact resting entirely in parol. Constructive notice, by the record of her deed, he had not, nor did any possession which she had, impose upon him the duty of inquiry. Yet he may have had actual notice. It is true, there is no evidence of this on record. But the only person interested in producing such evidence is not a party to the suit, and cannot be made such. No decree of ours, in this case, will bar her or prevent her from calling witnesses in any ejectment she may bring, to show that the purchaser at the sheriff's sale was informed of her title before the lot was struck off to him. The value of the title which the complainant offers to the defendant depends, then, upon extrinsic circumstances which this court cannot investigate, and upon which it can pronounce no binding decree. It is doubtful; what courts of equity regard as unmarketable; such a title as a purchaser will not be compelled to take. To use language taken from Bumberger *v.* Clippinger, 5 W. & S. 311, it cannot be warranted to him, and therefore specific performance of his contract will not be decreed.

It is insisted, however, on the part of the complainant, that even if his title is unmarketable, the defendant is precluded from refusing to execute the contract specifically, by his having waived his right to object on account of the title of Elizabeth C. Jones. This point does not appear to have been definitely made in any of the exceptions taken to the report of the master, and if it had been, it could not prevail. It is not supported by either the facts or the law. Certainly there is not a shadow of proof of any express agreement of the defendant to take an imperfect title, or to assume the risk of the former conveyance made by Osborn Conrad to Elizabeth C. Jones. On the contrary, in all the negotiations which preceded the execution of the article of agreement, he insisted upon having a good title, and expressed a determination not to buy a lawsuit. He was also constantly assured by the vendor that the title was undoubted and indisputable. Nor is a waiver to be implied. There is nothing that tends to raise an implication of it, unless it is found in the facts that the defendant knew of the prior deed to Elizabeth C.

[Speakman *v.* Forepaugh.]

Jones before the article of agreement was made, and that the article contains no specific covenant against her title. In this state, when contracts for the sale of land have been executed, and securities for the purchase-money have been taken, if there be a known defect of title, and no covenant against it in the deed, there is a presumption that the purchaser undertook to run the risk of the defect, and if he did, he cannot detain the purchase-money on account of it. This is a rule in regard to executed contracts, but even in regard to those it is not a conclusive presumption. See Rawle on Covenants for Title, 723-4-5-6-7. It is inapplicable to a mere executory contract of sale, a contract which is only preparatory. Articles of agreement for the sale of land are not intended to describe minutely the extent of the rights to be assured to the purchaser. They rarely undertake to declare what covenants the vendors shall give. They refer not to the title of the vendor when they are executed, but to an assurance afterwards to be made, it may be, of a right which the vendor is expected to acquire after he has engaged to convey. There is therefore no presumption that a vendee by articles has agreed to waive any right which the articles, standing alone, would give him. Nor can it be said of him that he has exacted no covenant against a defect of title of which he had knowledge. His vendor, in covenanting to convey the land to him, has covenanted to make him a good title, that is, a title free from all defects. What more could the vendee have required? Had he demanded an enumeration of defects, there would have been more reason for presuming that he intended to take the risk of those not mentioned. But by taking an unlimited engagement to assure to him the land, he has taken the largest possible covenant. Such is the construction heretofore given to such articles. A covenant to convey to A. is a covenant to convey to him and his heirs. It is also a covenant to convey a title good against the inchoate right of dower of the vendor's wife, though she has not signed the articles. The presumptions raised against a purchaser by an executed contract then are inapplicable to the case of a vendee by articles. Certainly the strong language used by Chief Justice Gibson, in Lighty *v.* Shorb, 3 Penna. Rep. 452, cannot be applied to him. The point ruled in Cadwalader *v.* Tryon, 1 Wright 318, is not inconsistent with what we have said. There the contract had been mainly if not wholly executed, and the purchaser had confessed a judgment for the purchase-money. He was sued not upon the article, but upon the judgment given years after the article was executed.

Our conclusion then is, that the case shows neither an express nor implied waiver of the defendant's right, under the agreement, to a good and marketable title.

The decree made at *Nisi Prius* is therefore affirmed.