## Hoover et al., Exrs., *v.* Pontz, Appellant.

*Practice, C. P.—Trial by court—Act of April 22, 1874, P. L. 109 —Judgment.*

1. In a trial by a court without a jury, it is error to direct a verdict and judgment at one and the same time; under the Act of April 22, 1874, P. L. 109, judgment can be entered only after exceptions have been filed and argued.

*Actions—Contract—Sale of land—Equitable principles—Vendor and vendee—Title to land—Evidence.*

2. An action on a contract for sale of land, to recover the purchase money specified therein, is in legal effect a bill or petition for specific performance of the contract, and is governed by the same equitable principles.

3. If there is color of an outstanding title which may prove substantial, though there is not enough evidence in the instant case to enable a chancellor to say that it is so, a purchaser will not be compelled to take it and encounter the hazard of litigation with an adverse claimant.

4. A court should never undertake to declare a title to real estate to be good and marketable, unless all the parties having a possible interest are present on the record, or, where the controlling question for determination is the construction of a written instrument, unless the document and all conceivable relevant facts are set forth in full.

5. Where a title depends on the existence of a fact which is not of record, and requires the production of oral evidence to establish it, the case must be very clear to justify the court in compelling the purchaser to take the title.

*Tenants in common—Heir in possession—Adverse possession— Presumption.*

6. Where one of a number of heirs enters into possession of real estate, presumptively his possession is not advere to the others.

Argued May 16, 1921. Appeal, No. 396, Jan. T., 1921, by defendant, from judgment of C. P. Lackawanna Co., Aug. T., 1920, No. 46, for plaintiffs, on case tried by the court without a jury in case of George W. Hoover et al., executors of Joseph Hoover, deceased, v. Fred D. Pontz.

Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.   Reversed.

Assumpsit for purchase money of real estate.   Before LANDIS, P. J.

The case was tried by agreement of counsel without a jury under the Act of April 22, 1874, P. L. 109.

The opinion of the Supreme Court states the facts.

The court entered a verdict and judgment at the same time in favor of plaintiffs.   Defendant appealed.

*Error assigned,* among others, was judgment, quoting it.

*Harry L. Raub, Jr.,* for appellant.—If the contention that Joseph Hoover was a cotenant is sound, then he cannot, under the testimony offered, claim title in severalty by adverse possession, for in order for a cotenant to show adverse possession he must show more than continued, visible, notorious and distinct possession for the space of twenty-one years: Tulloch v. Worrall, 49 Pa. 133; Susquehanna & Wyoming Val. R. R. v. Quick, 61 Pa. 328; Hart v. Gregg, 10 Watts 185; Forward v. Deetz, 32 Pa. 69; Wells v. Becker, 24 Pa. Superior Ct. 174; Lamon v. Rogers, 42 Pa. Superior Ct. 437.

No argument or printed brief for appellees.

OPINION BY MR. JUSTICE SIMPSON, July 1, 1921:

Defendant agreed to purchase from plaintiffs a property in the City of Lancaster, if the title thereto was marketable, but, alleging it was not, defendant refused to carry out the contract.   Plaintiffs thereupon sued to recover the purchase money; and, on a trial by the court without a jury, obtained a verdict and judgment, from the latter of which the present appeal was taken.

It may be said, in passing, that the court below erred, in its opinion following the trial, by directing, at one

and the same time, the entry of both verdict and judgment. The Act of April 22, 1874, P. L. 109, provides that the "decision of the court shall be in writing, stating separately and distinctly the facts found......and the conclusions of law," to which exceptions may be filed within thirty days, and, after the hearing thereof, the court "may order judgment to be entered according to the decision previously filed, or make such modifications thereof as in justice and right shall seem proper."

It is admitted George Hoover obtained title to the premises in controversy, by deed dated January 14, 1811; that he died testate in 1846, by his will giving all his property to his wife for life, and upon her death directing his executors to sell it and divide the proceeds among his seven children, one of whom was Joseph Hoover; and that it never was sold by his executors, or by any other representative of his estate, or by his heirs at law, or any one deriving title through them. Joseph Hoover died on July 4, 1898, in possession of the property; but when he entered into possession, and under what title, does not appear, though he had been in actual possession for upwards of fifty years, and his daughter, who was given a life estate under his will, continued in possession for some twenty years afterwards. After her death, his will directed his executors, who are the plaintiffs here, to sell the property, and the contract in suit was made by them because of that provision. Neither the personal representatives of George Hoover, nor any of his other six children, nor any one deriving title through them or any of them, are parties to the suit. Plaintiffs claim that Joseph Hoover acquired title either by grant, which was not shown, or by adverse possession; and the question on this appeal is: Had he such an ownership as vested in his executors a "good and marketable" title, which they could compel defendant to take?

Since "an action for the purchase money of land is in legal effect a petition or bill for specific performance of the contract of purchase, and is governed by the same

equitable principles" (Black v. American International
Corporation, 264 Pa. 260, 264), we are required to de-
termine whether plaintiffs could have compelled specific
performance of the contract. If their title was doubtful,
in a legal sense, of course they could not. In Black v.
American International Corporation, supra, we said
(page 264): "'If there be a color of an oustanding
title which may prove substantial, though there is not
enough evidence [in the instant case] to enable the
chancellor to say that it is so, a purchaser will not be
held to take it and encounter the hazard of litigation
with an adverse claimant.'" In Schuldt v. Reading
Trust Co., 270 Pa. 360, we decided: "A court should
never undertake to declare a title to real estate good and
marketable, unless all the parties in interest are present
on the record, or, where the controlling question for de-
termination is the construction of a written instrument,
the case-stated sets forth the document in full, with all
conceivable relevant facts."

It is undoubtedly true, a good title may be acquired
by adverse possession, and, in exceptional cases, a mar-
ketable title, which a purchaser may be required to take.
The instances in which it may be compelled are rare,
however, because proof of the fact of open, notorious,
continuous, visible and hostile possession, necessarily
rests in parol, and "where the title depends on the ex-
istence of a fact which is not a matter of record, and the
fact depends for its proof entirely upon oral evidence,
the case must be made very clear by the vendor to war-
rant the court in ordering specific performance": 36 Cyc.
635-6. This is also broadly suggested in Speakman v.
Forepaugh, 44 Pa. 363, 373.

Out of all the cases brought to this court, where a
vendor endeavored to compel a vendee to take a title
depending solely on proof of adverse possession, we have
found but two which have been successful,—each be-
cause of express admissions in defendant's answers. In
Dallmeyer v. Ferguson, 198 Pa. 288, the answer is not

quoted, but the paper-books show respondent admitted that plaintiff's predecessor in title became the owner by a purchase at sheriff's sale in 1827, and then "entered peaceably into possession......under claim of right and color of his said title, and thereafter [he and his vendees] continued in the actual, adverse, hostile, visible, notorious and exclusive possession" thereof until 1900, when the case was tried.   In Westfall v. Washlagel, 200 Pa. 181, the case-stated admitted that for "forty-three years certainly, and probably more......plaintiff and his predecessors in title had continuously exercised the rights of ownership, paid the taxes and for all municipal improvements, had filled up the lots to the established grade, and [the alleged possible claimant thereto] had never exercised any rights of ownership, nor claimed any rights in or to the lots, or either of them."

Shober v. Dutton, 6 Phila. 185, is sometimes cited as a case where this court decreed specific performance, though the vendor's title depended entirely on such proof. This is not the fact, however.   Our records show (Equity Docket, January Term, 1866, No. 11), that the case, as reported, was simply Judge READ's recommendation as chancellor, while sitting at nisi prius, that defendant's counsel filed no exceptions thereto, but, on the contrary, agreed in writing to the entry of a decree for plaintiff before the time for the filing thereof had expired, and hence the case never reached the court in banc.   Moreover, on the merits, it was not simply one of title acquired by adverse possession; for the recitals in the deeds, through which plaintiff's ownership arose, show the sheriff's vendee obtained title under a judgment on a suit to recover ground rent, the deed reserving it being duly recorded, and in the direct chain of title from the Commonwealth.   The only alleged defect was that no conveyance of the land to defendant, subject to the rent, appeared of record in that suit; this, of course, being a matter of no importance, since the covenant to pay the rent ran to the assignees of the tenant, and the title

derived through the sheriff's sale dated back to the record of the ground rent deed. Probably a recognition of these facts explains the consent decree.

The present case, however, wholly lacks any admission or conclusive proof of the essential facts requisite to a marketable title. For all that appears, Joseph Hoover may have entered into possession as one of the seven heirs of his father, in which event his title presumptively would not have been adverse (Tulloch v. Worrall, 49 Pa. 133, 140; Susquehanna and Wyoming Valley R. R. and Coal Co. v. Quick, 61 Pa. 328; Velott v. Lewis, 102 Pa. 326), though it might have been found to be so by a jury, in a direct contest with the other heirs, or those deriving title from them: Rohrbach v. Sanders, 212 Pa. 636; Lewitsky v. Sotoloff, 224 Pa. 610. It is sufficient here that defendant is not required to take the risk of a finding otherwise, at the instance of those not parties to this suit. We are all of opinion that the only safe and logical position, in this class of cases, is that stated in the foregoing quotation from Schuldt v. Reading Trust Company.

If the plaintiffs wish to clear their title, the legislature has given them abundant opportunities so to do, by the Acts of June 10, 1893, P. L. 415; April 16, 1903, P. L. 212, and April 18, 1905, P. L. 202; and, if the circumstances justify it, by a bill quia timet.

The judgment of the court below is reversed.