## Olweiler et al., Executors, v. Greenblat.

*Real estate—Marketable title—Adverse possession—Outstanding title.*

1. An action on a contract for sale of land to recover the purchase money specified therein is in legal effect a bill or petition for specific performance of the contract and is governed by the same equitable principles.

2. If there is color of an outstanding title which may prove substantial, though there is not enough evidence to enable a chancellor to say that it is so, a purchaser will not be compelled to take the title.

3. A vendee cannot be required to take a title which invites or exposes him to the hazard of litigation with an adverse claimant, even though on the evidence produced the court could not say the adverse claimant has a good title.

4. Where, in such case, a paper title to only the undivided two-thirds of a tract of land was conveyed to the vendor of the plaintiff's vendor and there is no trace of the other one-third interest, title to the whole fee cannot be supported by adverse possession so as to make a marketable title for which the plaintiff can collect the purchase money from the defendant who had agreed to purchase it, where the affidavit of defence, while admitting the adverse possession, denies the plaintiff's title to more than two-thirds of the property. In such case, the Act of April 18, 1905, P. L. 202, provides a method of settling titles which should be followed.

5. A court should never declare a title good and marketable unless all the parties having a possible interest are present on record.

6. Where a title depends on the existence of a fact which is not of record and requires the production of oral evidence to establish it, the case must be very clear to justify the court in compelling the purchaser to take the title.

Rule for judgment for want of a sufficient affidavit of defence. C. P. Lancaster Co., Feb. T., 1924, No. 42.

*T. Roberts Appel*, for plaintiff and rule; *Harvey B. Lutz*, for defendant.

LANDIS, P. J., April 19, 1924.—Henry C. Fahs died on July 8, 1923, leaving a last will and testament and codicils thereto, which were duly proven before the Register of Wills of Lancaster County on July 19, 1923. The executors named therein were the plaintiffs. He died in possession of a certain lot of ground fronting on the west side of South Market Street, in the Borough of Elizabethtown, on which are erected a two-story frame dwelling, known as Nos. 52 and 54 South Market Street, a large two-story frame building, a frame barn and other improvements.

By the said will the testator directed his executors to convert into cash whatever remained of his estate, at either public or private sale, and he gave them authority to make good and sufficient deeds to the purchaser or purchasers thereof. In pursuance of this authority, the plaintiffs offered the above-mentioned real estate at public sale and sold the same to Wolf Greenblat, the defendant, for the sum of $11,550. Instead of giving security, Greenblat paid on account of the purchase price the sum of $1550, and then there remained due upon the contract of sale the sum of $10,000. The defendant has waived the tender of the deed, but he has given notice that he would not take the property and pay the balance of the purchase money, because, as he asserts, the plaintiffs cannot give him a legal deed of conveyance, and because the title to said property is not marketable. To enforce the agreement, the plaintiffs have brought this suit.

The facts upon which the parties rest their case are not in dispute. In 1809 the property was owned by one John Heffly. Heffly died, leaving a last will and testament dated Sept. 24, 1809. It was proven before the Register of Wills on Nov. 23, 1809. By this will he gave his widow, Elizabeth Heffly, a life estate in the same, and divided the remainder among his three daughters, Mary Heffly, Elizabeth Heffly and Margaret Heffly. On March 21, 1843,

Mary Heffly, afterwards Mary Richardson, conveyed the undivided third to Isaac Redsecker, and on April 18, 1857, Isaac Redsecker's heirs conveyed the same interest to William Marquart. On Jan. 4, 1862, William Marquart and wife conveyed the same to Martin Kolp. Elizabeth Heffly, who was afterwards Elizabeth Whistler, died, and on July 12, 1862, her heirs conveyed their undivided third to Martin Kolp. No mention is made of Margaret Heffly's share therein, and that interest cannot now be traced.

On March 29, 1889, Martin Kolp conveyed the whole lot to Henry C. Fahs, the testator. There are no recitations of the prior title contained in this deed. It was recorded on Nov. 18, 1889. Fahs took possession under the same and retained possession until his death. He paid the taxes, altered, remodeled and improved the buildings, and was in exclusive and adverse possession of the property since the date of the deed. The question arising is whether under these facts the plaintiffs can make a good title for the property to the defendant.

It is clear that on the face of the papers the written title is defective. The deeds convey to the vendor of the testator only the undivided two-thirds of the land, and that is all which Martin Kolp seemingly possessed. Only if the whole of the fee can be supported by adverse possession can a title to the whole lot be vested in the plaintiffs. Under the authorities, we do not think the facts are sufficient to support a judgment.

In Hoover v. Pontz, 271 Pa. 285, which is about the last deliverance on the subject, the Supreme Court said: "Since 'an action for the purchase money of land is in legal effect a petition or bill for specific performance of the contract of purchase and is governed by the same equitable principles' (Black v. American International Corporation, 264 Pa. 260, 264), we are required to determine whether plaintiffs could have compelled specific performance of the contract. If their title was doubtful in a legal sense, of course, they could not. In Black v. American International Corporation, supra, we said (page 264): 'If there be a color of an outstanding title which may prove substantial, though there is not enough evidence to enable the chancellor to say that it is so, a purchaser will not be held to take it and encounter the hazard of litigation with an adverse claimant.'" In Schuldt v. Reading Trust Co., 270 Pa. 360, it was held that "a court should never undertake to declare title to real estate good and marketable unless all the parties in interest are present on the record; and where the controlling question for determination is the construction of a written instrument, the case stated should set forth the document in full with all conceivable relevant facts." It was also said that "it is undoubtedly true a good title may be acquired by adverse possession, and, in exceptional cases, a marketable title, which a purchaser may be required to take. The instances in which it may be compelled are rare, however, because proof of the fact of open, notorious, continuous, visible and hostile possession necessarily rests in parol, and where the title depends on the existence of a fact which is not a matter of record, and the fact depends for its proof entirely upon oral evidence, the case must be made very clear by the vendor to warrant the court in ordering specific performance. . . . Out of all the cases brought in this court, where a vendor endeavored to compel a vendee to take a title depending solely on proof of adverse possession, we have found but two which have been successful, each because of express admissions in defendant's answer."

In this case it is urged that the affidavit of defence admits that "the said H. C. Fahs, the above-named decedent, at or about the time of the execution

Olweiler et al., Executors, v. Greenblat.

and delivery of said deed, took possession of the said premises, altered, remodeled and improved the same, paid the taxes thereon, and, by himself and tenants or lessees claiming under him, occupied said premises from the date of said purchase continuously up to and including the time of his decease, as aforesaid, and he was in actual, continued, visible, notorious, distinct, hostile, exclusive and adverse possession thereof the term of thirty-three years and upwards. . . ." In a general way, this is true. But in another paragraph the defendant denies that the testator died seized in fee of this land, and he furthermore asserts that H. C. Fahs could only take the interest which Martin Kolp had in the same, which was two-thirds. We, therefore, do not think this admission is sufficient to take the case out of the rule. It must be remembered that all the parties in interest are not upon the record, and if this rule is made absolute, the defendant runs the risk of being subjected to an action on the part of the holders, if any there be, of the outstanding one-third interest. Then, too, the Act of April 18, 1905, P. L. 202, provides a way whereby all questions concerning the title can be set at rest, and we think this method should be pursued.

We are of the opinion that this rule should be discharged. Rule discharged.

From George Ross Eshleman, Lancaster, Pa.