## Fisher v. Green

*John P. Sipes*, for plaintiff.

*John W. Mentzer*, for defendant.

SHEELY, P. J., December 26, 1936.—In this action of assumpsit plaintiff seeks to recover from defendant the purchase price of a tract of real estate which plaintiff agreed to sell and defendant agreed to buy. Defendant refused to accept a deed from plaintiff, alleging that plaintiff's title to the real estate was not good and marketable.

The parties have agreed upon the facts and submitted a case stated in the nature of a special verdict for the opinion and judgment of the court. If the court be of the opinion that plaintiff's title is good and marketable, judgment is to be entered for plaintiff; otherwise for defendant.

Plaintiff claims title to the real estate as the heir of D. Edward Fisher, the adopted son of plaintiff's deceased brother, Dr. D. E. Fisher, who died on February 25, 1936. Also surviving D. Edward Fisher, who died on August 20, 1936, is his natural mother, Mary H. Robinson, and his natural brother and sister. The question argued by counsel is whether the real estate passed under the intestate laws of Pennsylvania to the natural mother of decedent or to his adoptive uncle, it being contended by plaintiff that the latter proposition is correct.

It seems obvious that the purpose of this action is to determine judicially the status of the title to the real estate in question, and to fortify plaintiff's title with a court decision in his favor. It must be borne in mind,

however, that this action is between one claimant to the real estate and an alleged purchaser from him. The other possible claimant to the real estate, the natural mother of decedent, is not a party to this proceeding, and any judgment here entered would not be binding upon her, nor is she bound by the agreed statement of facts submitted to the court. One claimant to real estate cannot agree another claimant out of court by submitting a case stated in an action between himself and an alleged purchaser from him.

We point this out because it has a material bearing upon the issue here submitted. It has been held that a marketable title is one which is so free from difficulty as to law and fact that on a resale an unwilling purchaser should be unable to raise any question which may appear to a judge sitting in equity, so doubtful that a title involving it ought not to be enforced: Dalzell v. Crawford, 1 Pars. Sel. Eq. Cas. 37, 46 (1842) ; and that if there be a color of an outstanding title which may prove substantial, though there is not enough in evidence to enable the chancellor to say that it is so, a purchaser will not be held to take it, and encounter the hazard of litigation with an adverse claimant: Speakman v. Forepaugh, 44 Pa. 363, 371 (1863) ; "it has been often held that a title is not marketable where it exposes the party holding it to litigation": Swayne v. Lyon, 67 Pa. 436, 439 (1871).

We do not believe that the title of plaintiff in this case is free from difficulty as to law and fact, or that on a resale an unwilling purchaser would be unable to raise any question as to the title, or that defendant could receive a title from plaintiff which would be even reasonably free from the possible hazard of litigation.

D. Edward Fisher was adopted by Dr. D. E. Fisher on March 19, 1906, by a decree of the Court of Common Pleas of Fulton County. The petition prayed for the adoption of the child by Dr. D. E. Fisher, and the decree of court was made accordingly. The natural mother of the child joined in the petition to signify her assent to the

adoption. However, the natural mother of the child was then the lawful wife of Dr. D. E. Fisher, the adopting parent.

It is true that she joined in the petition for adoption solely for the purpose of signifying her assent, as natural mother, to the adoption, and not for the purpose, as the wife of the adopting parent, of joining in the adoption. This is evident from an examination of the petition for adoption and the decree of court entered thereon. But what is the legal effect of the adoption by a husband of his wife's child by a former marriage?

So far as we have been able to discover, this question has not been passed upon by the courts of this State, nor have we, in a casual examination, discovered a similar case in any other jurisdiction. We cannot say, therefore, that the question is free from legal doubt, and the determination of this question might seriously affect the title to this real estate. If the adoption did not cut off the rights of the natural mother she would undoubtedly inherit the real estate. But if the adoption did cut off her rights as natural mother, we are confronted with the question argued by counsel.

It has been held that adoption is a question of the intention of the adopting parent and that the decree of court permitting the adoption merely carries out that intention. The court may veto the intention of the parties, but its affirmative action is merely an endorsement of that intention: Peterson's Estate, 212 Pa. 453, 456 (1905). The thought that the intention of a husband adopting his wife's child would be not to cut off her rights as natural mother and to make the child *his* child to the exclusion of her, but rather to make the child *their* child, and to assume merely the rôle of father, and to share with his wife, as natural mother of the child, the responsibility of caring for and rearing the child, strikes us as being so reasonable and probable that we would hesitate to declare the contrary.

After this theory was suggested to the parties, they submitted a supplemental agreement of fact in which they stipulated that at the time of the adoption Dr. D. E. Fisher and his wife were separated and she had returned to her former husband, and that this separation culminated in a divorce several years later. Defendant in this case is bound by the facts agreed upon, and this additional fact might negative the theory suggested in the preceding paragraph. But the proof of this fact certainly opens the door for litigation on the part of the wife of Dr. D. E. Fisher, and we cannot say that plaintiff could convey a title to defendant which would not expose him to litigation. The situation is analogous to that presented in Speakman v. Forepaugh, supra.

On the contrary, what defendant would be purchasing would be plaintiff's rights in the real estate subject to a determination of those rights in an action of ejectment between defendant and Mary Robinson. Such a title could not be resold by defendant to an unwilling purchaser who would not agree to the facts agreed upon by this defendant.

There is another reason why this title is not now marketable, although this defect could be easily corrected. Both Dr. D. E. Fisher, the person from whom D. Edward Fisher inherited this real estate, and D. Edward Fisher died within the past year. The real estate is therefore subject to the lien of their debts: section 15 (*a*) of the Fiduciaries Act of June 7, 1917, P. L. 447. The title would not be marketable until the expiration of these liens or until the real estate would be relieved thereof by appropriate proceedings: Colenburg et al. v. Venter, 173 Pa. 113 (1896).

If the facts are as clear as the parties to this action seem to think, it is possible that counsel may be able to devise some other short procedure to have the question determined in which Mrs. Robinson could be made a party. The question could then be definitely passed upon and the status of the title finally adjudicated.

In the present proceeding we hold that the title tendered by plaintiff to defendant, while it might be good, is not a marketable title because it is not free from difficulty as to law and fact and, under the stipulation, judgment must therefore be entered for defendant.

And now, December 26, 1936, judgment is directed to be entered in favor of A. L. Green, defendant, and against James B. Fisher, plaintiff.