## Morrissey v. Arey

*Robert C. McFadden*, for plaintiff.

*Harry A. Kitey*, for defendants.

KOCH, P. J., December 19, 1967.—The complaint in this action in assumpsit avers that on May 15, 1967,

the parties executed a written contract, under the terms of which plaintiff agreed to sell premises known as 758 and 760 Railroad Street, Catasauqua, Lehigh County, Pa., to defendants, for the sum of $2,000. The contract provided for a down payment of $50, and the balance of $1,950 at the time of settlement, which was to be on or before July 15, 1967. Other allegations of the complaint set forth that plaintiff has not been in default under the contract and is ready, willing and able at all times to carry out the contract, and that defendants have failed to make settlement. Plaintiff now claims the purchase price of $2,000, including interest from July 15, 1967.

We now have for disposition defendants' preliminary objection, a demurrer, the thrust of which is that by the terms of the written agreement, plaintiff is obliged to look to the down money as his exclusive remedy in the event of a default.

The narrow issue before us revolves about paragraph 6 of the printed form of agreement, which is as follows:

"In the event that the purchaser fails to carry out all the covenants, stipulations and agreements herein contained, then the down money this day paid, shall be forfeited as liquidated damages for the breach thereof, and the purchaser shall not be entitled to the benefit of any resale".

As a general principle, a seller of real estate is entitled to specific performance, the recovery of the purchase money, by instituting a quasi legal action which has been characterized as equitable assumpsit. It is designated as equitable assumpsit for the reason that the judge before whom the action is tried also acts as a chancellor and equitable principles are applicable: Black v. American International Corporation, 264 Pa. 260; Hoover v. Pontz, 271 Pa. 285; Heights Land Company v. Swengel's Estate, 319 Pa. 298.

The broad rule governing this case was articulated by Judge Porter, in Cape May Real Estate Company v. Henderson, 42 Pa. Superior Ct. 1 (affirmed, 231 Pa. 82) : ". . . a party cannot take advantage of his own wrong or set up his own default to work a forfeiture of his own contract, unless the contract expressly gives him the right to do so. While parties may contract that on default the contract shall become void at the option of either party, yet such intent in the agreement must be so plain as to be unavoidable in order to sustain such a construction. The clause of forfeiture or termination of the estate, upon the failure of a purchaser or lessee to pay purchase money or rent at the time by the contract required, is presumed to be for the benefit of the grantor or lessor, and as against him no default of the grantee or lessee can release the latter from his covenant to pay, unless the intent of both parties to that effect be made to appear by clear, precise and unequivocal language. Covenants that the contract shall become void, or that the estate shall cease and terminate, on failure by the grantee or lessee to pay at the time specified, are not self-operating and do not make the contract void except at the option of the grantor or lessor, 'and that legal effect, no matter what form or cumulation of phrases be used, can only be changed by an express stipulation that the contract shall be voidable at the option of either party,' is well settled: Cochran v. Pew, 159 Pa. 184".

The rationale of the Cape May case was followed in Korman v. Trainer, 258 Pa. 362. In that decision, the plaintiff-seller sued the defendant-purchaser in assumpsit for the balance of the purchase price. Under the terms of the agreement, plaintiffs covenanted to sell defendants two lots situated in the City of Philadelphia for the sum of $3,000; to be paid, $200 at the signing of the agreement "(which deposit shall be

forfeited to the said party of the first part), [the plaintiffs] as liquidated damages in case of the default by the party of the second part [the defendants] in the performance of this agreement, and the balance of the purchase-money as follows: $2,800 to be paid in cash at the time of settlement".

In the Korman case, defendant maintained that the lots mentioned in the agreement were vacant and unimproved, and that the clause in the agreement "which deposit shall be forfeited to the said party of the first part as liquidated damages in case of the default by the party of the second part in the performance of the terms of this agreement" limited plaintiffs' rights, so that they had "no other remedy in law or equity than the retention of the said $200 deposit money"; that the agreement provided a remedy for the vendors in case of breach which was meant to be exclusive and, time being the essence of the agreement, it was at an end upon failure of vendees to pay the balance of the purchase money and refusal to accept the deed; the forfeiture was by way of liquidated damages, that the effect of said forfeiture clause is a release and discharge of vendees from any and all subsequent liability under the agreement, and the large sum forfeited, $200, showed such intention of the parties. Upon these facts, the Supreme Court sustained plaintiff's position that the affidavit of defense was not sufficient, and in a per curiam opinion cited Cape May Real Estate Company v. Henderson, supra.

Our research has failed to disclose any case which would support the view that a mere provision in the agreement that in case of default the vendee shall forfeit the down money as liquidated damages precludes the vendor from maintaining a suit for specific performance. The weight of authority is to the contrary. See 49 Am. Jur. Specific Performance §45; 32 A. L. R. 600; 98 A. L. R. 890.

We turn, then, to the specific provision before us. In our opinion, its language does not bar plaintiff's action, and any intention that his rights should be limited to the retention of the down payment was not expressly set forth. We find no language in the clause which indicates that the vendor has specifically agreed to restrict his remedy to the forfeiture of the deposit money and thereby substituted it for the remedy of equitable assumpsit. Even if the language were regarded as ambiguous, we cannot give it such interpretation as would limit plaintiff's rights: 44 Am. Jur. Specific Performance §44; Restatement, Contracts, §378; Roth v. Hartl, 365 Pa. 428.

Defendants contend that the absence of the words "at his option" obliges us to conclude that plaintiff is limited to a retention of the down money. In support of this view, we are referred to Addesso v. Gargalli, 26 Dist. R. 169. However, we believe that Boyd v. Hoffman, 241 Pa. 421, and other appellate decisions which we have cited, are controlling, and that the failure to use the words "at his option" does not limit plaintiff to a retention of the down money: Ladner's Real Estate Conveyancing, 2d ed., p. 85. Moreover, the use of the word *shall* (be forfeited) rather than *may* does not alter our conclusion. In Roth v. Hartl, supra, the provision utilizing the word *shall* did not alter the Supreme Court's conclusion that specific performance was available to the seller.

## ORDER

Now, December 19, 1967, defendant's preliminary objection in the nature of a demurrer is dismissed, and it is ordered that defendants file an answer on the merits within 20 days after service of this order upon their counsel.